# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

AKO BURRELL,

                    Plaintiff,

-v.-                                                          9:22-CV-1178
                                                             (DNH/MJK)

DONALD UHLER, et al.

                    Defendants.

---

AKO BURRELL, Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

# ORDER

On January 13, 2025, Plaintiff filed two discovery motions in this case seeking:[1]

1. leave to serve additional interrogatories on Defendants and a non-party witness who is identified as DIN 6930, because he is unable to pay for a stenographer (Dkt. No. 108); and

2. to compel Defendants to produce certain video, audio, and documents without cost. (Dkt. 110).

Defendants have not responded to either motion.[2]

---

[1] These motions were mailed on January 8, 2025—after the December 27, 2024 discovery deadline. But as discussed below, the subject of these motions should have been raised long ago.

[2] Notwithstanding Defendants' failure to respond to Dkt. 108 and 110, the Court is nevertheless "charged with the duty to control its docket and to satisfy its obligation to 'secure the just, speedy, and inexpensive determination of every action.'" *Rensselear Polytechnic Inst. V. Apple Inc.,* No. 1:13-CV-633, 2014 WL 201965, at *8 (N.D.N.Y Jan. 15, 2014) (quoting Fed. R. Civ. P. 1).

1

I.    **PROCEDURAL HISTORY**

On October 23, 2023, the Court issued a Mandatory Pretrial Discovery and Scheduling Order directing completion of discovery by April 23, 2024. (Dkt. 47). Three days later, Plaintiff requested a copy of the docket and an extension of the discovery deadline, alleging that his legal documents were being withheld from him. (Dkt. 51). Obliging Plaintiff, the Court extended the discovery deadline to May 23, 2024. (Dkt. 52).

On January 10, 2024, Plaintiff asked the Court for an order directing Defendants to provide him with their availability for depositions and Attica Correctional Facility to provide him with use of Webex. (Dkt. 57). In response, defense counsel took no position with respect to Plaintiff's request for a Court order to depose Defendants, but they noted that Plaintiff had not served any deposition notices. (Dkt. No. 58). Defense counsel also noted that there were *sixteen* Defendants and that deposition dates could not be provided since Plaintiff had not identified which Defendants he sought to depose. (*Id.*). Also, defense counsel expressed concern that Plaintiff would be unable to retain a stenographer for the "number of depositions he has requested." (*Id.*). Subsequently, Plaintiff requested permission to use a recorder for the depositions he sought to conduct. (Dkt. 59).

On February 1, 2024, Plaintiff moved to consolidate this action, 9:23-CV-98, and 9:22-CV-1156 for purposes of conducting depositions. (Dkt. 60). The next day, Plaintiff

2

again moved for a Court order seeking a tape recorder, notary, and use of Webex. (Dkt.

61). The Court responded:

> TEXT ORDER: The plaintiff's recent letter motions to the court concerning discovery/deposition issues [Dkt. Nos. 57, 59, 60, 61] are pending before the court, and the court is in the process of scheduling a discovery conference to resolve these issues. *In the interim, no further submissions will be accepted from the parties concerning the discovery/deposition issues that have been raised.* Any further submissions received will be stricken from the docket. Authorized by US Magistrate Judge Mitchell J. Katz on 2/7/2024. (Copy served via regular mail)(meb) (Entered: 02/07/2024)

(Dkt. 64) (emphasis added).

The *very next day*, Plaintiff moved for a Court order seeking to conduct

depositions and filed a letter request which included the names of three incarcerated

individuals he wanted to depose. (Dkts. 69, 70).

Three weeks later, the Court held a stenographically-recorded-video conference

with the parties and entered the following text minute entry:

> The court discussed with plaintiff that he must comply with the Local Rules of the court and to only file letters that correspond to his specific case. The court and the parties discussed at length the numerous filings the court has received from plaintiff. The parties should rely on the transcript of this conference as documentation of the details of the court's rulings, guidance, and the supporting reasons. The court has DENIED without prejudice 57 59 65 66 69 70 71 plaintiff's letter motions and 60 plaintiff's letter motion is DENIED with prejudice. As to 68 plaintiff's letter motion, the court directed the Assistant Attorney General's office to provide a copy of the complaint and docket sheet to plaintiff. On or before 4/29/2024, the Assistant Attorney General will respond to plaintiff's interrogatories by regular mail. Defense counsel will also initiate the request to obtain the OSI file from NYS DOCCS. Pretrial deadlines have been extended, as reflected in the accompanying text order. Appearances: Ako Burrell, pro se plaintiff; Rachel

3

Ouimet, AAG for defendants. (Court Reporter: Jodi Hibbard. Time: 1:35
PM - 2:28 PM.) (Copy served by regular mail)(kmc) (Entered: 02/26/2024).

The Court also issued a text order extending the discovery deadline to July 31, 2024.

(Dkt. 72).

Three days after the conference, Plaintiff requested subpoenas for the non-party

incarcerated individuals. (Dkt. 73). Again, defense counsel took no position on

Plaintiff's request for subpoenas. (Dkt. 74). But they reserved their objections relative

to safety and security concerns and raised their concern about Plaintiff's inability to

retain a stenographer for the requested depositions. *Id.*

The Court, addressing the parties' submissions, issued a text order stating:

TEXT ORDER: The Court has reviewed plaintiff's letter 73 requesting the
court issue subpoenas to nonparty incarcerated persons who are alleged to
be witnesses to events described in plaintiff's complaint. From plaintiff's
letters 59 66 and 69, the Court is aware that plaintiff proposes to use an audio
device to record the proposed depositions. The Court has also reviewed
defendants' response 74 which takes no position regarding the request for
subpoenas, reserving rights with respect to safety and security issues, and
concerns that plaintiff has yet to show his ability to pay for the costs and
expenses arising from the proposed depositions, including those to be
charged by a stenographer for preparing and providing transcripts. These
issues were discussed at length during a conference held on February 26,
2024. While plaintiff has identified the alleged witnesses and asserts that
they were present, he has not stated why he needs to depose these inmates.
Without this information, the Court is unable to determine if the inmates'
testimony will be probative or unreasonably cumulative and duplicative. The
Court also does not have any information regarding possible security and
logistical concerns. Finally, notwithstanding defense counsel and the
Court's requests, plaintiff has not provided information to establish how the
fees, costs and expenses (including transcripts) of conducting the requested
examinations will be paid. For these reasons, the Court denies plaintiff's
request for the issuance of subpoenas to nonparty incarcerated persons

4

**WITHOUT PREJUDICE**. SO ORDERED by U.S. Magistrate Judge Mitchell J. Katz on 3/14/2024. (Copy served via regular mail)(kmc) (Entered: 03/14/2024)

(Dkt. 75).

Plaintiff appealed that text order, Defendants responded, and U.S. District Court Judge David Hurd denied Plaintiff's appeal. (Dkts. 76, 78, 79).

On July 24, 2024, defense counsel requested a ninety-day extension of the discovery deadline. (Dkt. 83). The Court granted the extension and enlarged the discovery deadline to October 29, 2024. (Dkt. 84).

Defense counsel then requested another extension, 11 days before the discovery deadline, because Plaintiff was released from custody the day before his scheduled deposition, and he failed to update his address on the docket. (Dkt. 86).

The Court issued the following text order granting Defendants' request:

TEXT ORDER: Granting defendants' letter request at 86 for a sixty (60) day extension of the discovery deadline. *Discovery cutoff is 12/27/2024.* Defendants should attempt to confer with plaintiff to determine a mutually agreed upon date, time and location on which to hold plaintiff's deposition. To the extent plaintiff does not respond to defendants['] communications concerning his deposition, or otherwise fails to participate in the scheduling of his deposition, defendants shall proceed to determine the logistics. Defendants shall submit a proposed "So Ordered" letter to this court within fifteen days identifying the date, time and place that plaintiff's deposition will be held, and advising the status of communications with plaintiff. SO ORDERED by Magistrate Judge Mitchell J. Katz on 10/28/2024. (Copy served via regular mail)(kmc) (Entered: 10/28/2024)

(Dkt. 87) (emphasis added).

Roughly two weeks later, Plaintiff moved for a court order "terminating the examination on the ground that it is being conducted in bad faith & in a manner as to unreasonably annoy, embarrass, or oppress the deponent." (Dkt. 90). That same day, in response to Plaintiff's request, the Court issued the following text order:

> TEXT ORDER: Plaintiff's motion for a protective order 90 is denied. *Plaintiff voluntarily commenced this action. In doing so, he subjected himself to discovery, including a deposition by oral examination pursuant to FRCP 30.* The proposed deposition serves the purpose provided by the Federal Rules of Civil Procedure to obtain information that is relevant to any party's claim or defense. Plaintiff has provided no facts to support his conclusory statement that the deposition sought "serve only to embarrass and harass" him. To the extent that plaintiff's letter motion also objects to the deposition being conducted virtually, that objection is overruled. Plaintiff will sit for a deposition, under oath, conducted virtually for the reasons previously stated. Defendants have failed to abide by this court's directive 87 to submit a proposed "So Ordered" letter by November 12, 2024, identifying the date, time, and place of plaintiff's deposition. *On or before November 14, 2024, defendants shall submit a proposed "So Ordered" letter to this court identifying the date, time and place that plaintiff's deposition will be held, and advising the status of communications with plaintiff.* Authorized by Magistrate Judge Mitchell J. Katz on 11/13/2024. (Copy served via regular mail)(meb) (Entered: 11/13/2024).

> (Dkt. 91) (emphasis in original).

Like before, Plaintiff appealed the order, Defendants responded, and Judge Hurd denied Plaintiff's appeal. (Dkts. 91, 97, 102).

Plaintiff—on the discovery deadline—requested an extension of the discovery cut-off date, alleging that the facility where he was housed was not approving his

outgoing mail without a Court order. (Dkt. 99).[3] Two days later, the Court denied the

request:

> TEXT ORDER RE 98 [request for a free copy of the complaint], 99 Letter Requests: Plaintiff's request for an extension of his discovery deadline is denied without prejudice. The discovery deadline has been extended numerous times since the inception of this action. *The court notes that plaintiff is a frequent litigator in this court, whose indiscriminate litigation tactics routinely cause extensive delays in his cases*. Defendants are directed to file status update by 12/26/24 confirming whether the 12/6/24 deposition took place, and the status of discovery. Plaintiff's request for court intervention is otherwise denied. His concerns regarding his mail should be addressed through administrative channels at his current facility and, if necessary, by means of a properly filed action. It bears noting that, to the extent plaintiff complains of an inability to send mail at his current facility, the court has been in receipt of a multitude of correspondences from plaintiff in the past week alone, including the letter request in which he seeks the court's intervention. The Clerk is directed to provide Plaintiff with a one-time courtesy copy of the complaint for this action, together with a copy of the docket sheet. Plaintiff is advised that future copies of any documents will be subject to the $0.50 per page rule. Authorized by Magistrate Judge Mitchell J. Katz on 12/19/2024. (Copy served via regular mail)(meb) (Entered: 12/19/2024)

(Dkt. 100) (emphasis added).

---

[3] Plaintiff was reincarcerated between Defendant's request for an extension (Dkt. 87) and his own request at Dkt. 99.

II.     <u>**DISCUSSION**</u>

For the reasons stated below, the Court is denying Plaintiff's motions with prejudice.

### A. Plaintiff's Motion at Dkt. 108 is Denied

Plaintiff's motion at Dkt. 108 for leave to serve additional interrogatories on Defendants and an order directing compliance with his deposition notices for non-parties, is denied with prejudice.

The Court's concerns—raised in its March 14, 2024 text order—persist and Plaintiff's current motion offers nothing to address them. Like his failure a year ago, Plaintiff has not demonstrated that the witnesses he seeks to depose have any information that is relevant to his claims and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). Plaintiff has been afforded more than ample time to provide this information to the Court. He has squandered it. Plaintiff has no one to blame other than himself for his idleness.

Similarly, Plaintiff has not shown that he can afford the requested depositions. *See Murray v. Palmer,* No. 9:03-CV-1010 (DNH/GHL), 2006 WL 2516485, at *4 (N.D.N.Y. August 2006) ("[A] litigant proceeding *in forma pauperis* does not have a right to a waiver of (1) the cost of a deposition stenographer, (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal Rules of Civil Procedure, or (3) the copying cost of any deposition transcripts."); *see also Sitts v. Simmonds,* No. 9:20-CV-1475 (TJM/ML), 2021 WL

8

1853642 (N.D.N.Y.  May 6, 2021) *report recommendation adopted* 2022 WL 2666909

(July 11, 2022) ("However, as the Court has already advised, that Plaintiff proceeds *pro*

*se* and *in forma pauperis* does not relieve him of the obligation to pay all costs and fees

associated with prosecuting his claims, including the costs associated with discovery of

evidence.") (citation omitted). Northern District of New York Local Rule 5.1.4 provides

in part that "[t]he granting of an *in forma pauperis* application shall not relieve a party

of the obligation to pay all other fees for which the party is responsible regarding the

action, including but not limited to copying and/or witness fees." Plaintiff is also

directed to footnote number 5 of Judge Hurd's February 15, 2023 Decision and Order

which states that "although the Court has granted [Plaintiff's] application to proceed in

form pauperis, [Plaintiff] will still be required to pay fees that he may incur in this

action, including copying and/or witness fees. (Dkt. 5).

### B.  Plaintiff's Motion at Dkt. 110 is Denied.

Plaintiff's motion for relief from paying the copy charges associated with

discovery is denied with prejudice. Plaintiff is again reminded of his obligations under

N.D.N.Y. Local Rule 5.1.4 and Judge Hurd's March 7, 2023 Decision and Order.

Given Plaintiff's prolific litigation history in the Northern District of New York,

he is all too familiar with the Court's rules and his obligations as a litigant. Like in other

cases before this Court, Plaintiff has not only waited until the eleventh hour to seek

discovery, his motions at Dkt. 108 and 110 in this case were *mailed after* the December 27, 2024 discovery deadline and in violation of N.D.N.Y. Local Rule 37.1(h).

Even if Plaintiff had timely filed his motions at Dkt. 108 and 110, they would still be denied. The discovery deadline in this case has been extended several times because of Plaintiff's failure to participate in the prosecution of *his action*. It has been approximately *sixteen* months since this case has been assigned to this Court and Plaintiff is still seeking the same relief that was previously denied without prejudice. For reasons known only to him, Plaintiff has still not provided the Court with the information requested of him in the March 14, 2024 text order. Simply put, Plaintiff is wasting the Court's time and resources.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED**, that Plaintiff's motions at Dkt. 108 and 110 are **DENIED WITH PREJUDICE**.


Dated: April 2, 2025

                               _____

                               Hon. Mitchell J. Katz
                               U.S. Magistrate Judge

2006 WL 2516485
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James MURRAY, Plaintiff,

v.

R. PALMER; S. Griffin; M. Terry; F. Englese;
Sergeant Edwards; K. Bump; K.H. Smith;
A. Paolano; Ted Nejwith, Defendants.

No. 903-CV-1010 (DNH/GHL).
|
Aug. 29, 2006.

**Attorneys and Law Firms**

James Murray, Pine City, NY, Plaintiff, Pro Se.

Eliot L. Spitzer, Attorney General of the State of New
York, Albany, NY, James Seaman, Esq., Assistant Attorney
General, for the Defendants.

***DECISION AND ORDER***

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** Plaintiff James Murray commenced this action on August
14, 2003. Dkt. No. 1. By Order of United States District
Judge David N. Hurd on August 20, 2003, Plaintiff was
directed to file an Amended Complaint. Dkt. No. 2. Plaintiff
submitted an Amended Complaint on January 27, 2004.
Dkt. No. 6. The Amended Complaint asserted allegations
of wrongdoing against the Defendants regarding incidents
that occurred at Great Meadow Correctional Facility ("Great
Meadow"). *Id.* Plaintiff alleged that certain Defendants
assaulted him while other Defendants failed to protect him
from the alleged assault. Dkt. No. 6. Plaintiff also alleged
that certain Defendants were deliberately indifferent to his
serious medical needs. *Id.* By Order of District Judge Hurd
filed February 5, 2004, Plaintiff's Amended Complaint was
approved for filing and service was directed. Dkt. No. 7.
On October 15, 2004, Defendants Bump, Edwards, Griffin,
Nejwith, Palmer, Paolano, Smith and Terry submitted an
Answer to the Amended Complaint. Dkt. No. 35.

Currently before the Court are two Motions to Compel
Discovery filed by Plaintiff. Dkt. Nos. 52 and 54. Defendants

have responded in opposition to both motions. Dkt. Nos. 56
and 58. Plaintiff has submitted a reply and a sur-reply. Dkt.
Nos. 57 and 60.

In ruling on these discovery motions, the Court is mindful
of the following general propositions concerning pretrial
discovery. First, "actions alleging violations of § 1983 require
especially generous discovery." *Cox v. McClellan,* 174 F.R.D.
32, 34 (W.D.N.Y.1997) (Feldman, M.J.) (citing the late
District Judge James T. Foley's decision in *Inmates of Unit 14
v. Rebideau,* 102 F.R.D. 122, 128 [N.D.N.Y.1984] ). Second,
as stated in *Obiajulu v. City of Rochester, Dep't of Law,*

> An objection to a document request must
> clearly set forth the specifics of the
> objection and how that objection relates
> to the documents being demanded. The
> burden is on the party resisting discovery
> to clarify and explain precisely why its
> objections are proper given the broad and
> liberal construction of discovery rules
> found in the Federal Rules of Civil
> Procedure.

*Obiajulu v. City of Rochester, Dep't of Law,* 166 F.R.D. 293,
295 (W.D.N.Y.1996) (Feldman, M.J.) (citations omitted).

**I. PROCEDURAL MATTERS**

The Court initially notes that Plaintiff has not demonstrated
that he made a good faith effort to resolve discovery
matters with Defendants' counsel **after** receiving Defendants'
responses and before filing these motions to compel
discovery. Rule 7.1(d)(1) of the Local Rules of the Northern
District of New York ("Local Rules") requires that a party
make good faith efforts to resolve any discovery dispute prior
to filing any motion to compel discovery. The Pretrial Order
that the Court previously issued in this action specifically
advised Plaintiff of this Rule, and cautioned Plaintiff that
any motion to compel filed in this action that was not
accompanied by **documentation** that substantiated his efforts
to resolve any discovery disputes prior to the filing of such
motion would be denied. Dkt. No. 42 at 3. [1]

[1]    Specifically, the Pretrial Order stated:

2006 WL 2516485

**No motion to compel discovery shall be filed unless (a) the party has made good faith efforts to resolve the issues in dispute as directed in L.R. 7.1(d) and (b) the related discovery materials accompany the motion to compel. ANY MOTIONS NOT ACCOMPANIED BY DOCUMENTATION SHOWING THAT PARTY'S EFFORTS TO RESOLVE ANY DISCOVERY DISPUTES PRIOR TO FILING A MOTION TO COMPEL WILL BE DENIED FOR FAILURE TO COMPLY WITH THIS LOCAL RULE.**

Dkt. No. 42 at 3.

**\*2** The Court could deny Plaintiff's motion solely for his failure to make good faith efforts to resolve discovery disputes. *See* Local Rule 7.1(d)(1). However, in light of Plaintiff's *pro se* status, and because Defendants have fully briefed their opposition to Plaintiff's motions to compel, the Court will address the merits of the motions as well.

While Defendants argue that Plaintiff's second motion to compel should be denied as it was **filed** after the expiration of the motion to compel filing deadline, *see* Dkt. No. 56 at ¶ 33, this is incorrect. As the Second Circuit has noted, a document filed by an inmate is deemed "filed" when it is delivered to prison officials. *Dory v. Ryan,* 999 F.2d 679, 682 (2d Cir.1993). Plaintiff's second motion was dated January 29, 2005. Dkt. No. 54 at 7. Plaintiff has also submitted a copy of an "Authorized Advance Request" dated January 31, 2005 which he contends demonstrates that prison officials had received his second motion to compel for mailing no later than January 31, 2005. Dkt. No. 57, Ex. A. Since the motion to compel filing deadline expired on January 31, 2005, *see* Dkt. No. 51, Plaintiff's motion is deemed timely filed.

## II. FIRST MOTION TO COMPEL

Plaintiff's first motion to compel is actually a series of separate motions, each relating to a specific discovery request.[2] The Court will review each disputed request individually.

[2]    Local Rule 26.2 provides in relevant part that "[a]ny motion pursuant to Fed.R.Civ.P. 37 shall be accompanied by the discovery materials to which the motion relates if those materials have not previously been filed with the Court." Plaintiff has not attached a copy of all of the discovery materials to which the motions relate along with his motions to compel as required by the Local Rules. Plaintiff

has attached **some** of the discovery materials to his second motion to compel and other discovery materials to his reply. *See* Dkt. Nos. 54 and 57. Since the discovery materials are lengthy and not clearly referenced in Plaintiff's motions, the Court will address the discovery issues in the Order set forth in Plaintiff's motions.

### A. DOCS Employees Manual (June 1999 Edition) Relating to Use of Batons[3]

[3]    DOCS refers in all instances to the New York State Department of Corrections.

Plaintiff requested a copy of the DOCS Employees Manual (June 1999 edition) pertaining to the use of batons by correctional officers. Dkt. No. 52 at 1. After the first motion to compel was filed, Defendants provided Plaintiff with "the portion of the 6/99 Employee Manual pertaining to the use of force." Dkt. No. 56 at ¶ 16. Defendants have now substantially complied with Plaintiff's request. This aspect of Plaintiff's motion is **denied** as moot.

### B. DOCS Directive 4944

Plaintiff asserts that he was provided with a copy of the 2002 revision of Directive 4944, but in fact needed the April 7, 1999 version of the Directive. Dkt. No. 52 at 2. Defendants have since provided Plaintiff with a copy of the correct version of Directive 4944. *See* Dkt. No. 56 at ¶ 16. Therefore, this portion of Plaintiff's motion is also **denied** as moot.

### C. Master Index

Plaintiff seeks the "master indexes kept by the Department of Correctional Services and by the Great Meadow Correctional Facility for August 17, 2000 to date." Dkt. No. 52 at 4. Defendants object to this request for two reasons. First, Plaintiff's actual discovery request made no request for a master index *for Great Meadow,* but only for DOCS (*see* Dkt. No. 54, third attachment, ¶¶ 15, 16). Second, Defendants provided Plaintiff with a copy of the master index for "DOCS *directives"* but objected to providing Plaintiff with "a master index of all DOCS *records* as overly broad and not reasonably likely to lead to the discovery of admissible evidence." Dkt. No. 56 at ¶ 18. Defendants characterize Plaintiff's request for a master index of all DOCS records as a "fishing expedition." *Id.* The Court finds that the Plaintiff has not established a specific need, as related to his action, for a copy of the master index **for all records held by DOCS.** Moreover, the Defendants have otherwise responded to Plaintiff's request for

a copy of the master index of DOCS directives. This aspect of Plaintiff's motion is therefore **denied .**

### D. Free Copy of Medical and Mental Health Records

**\*3** Plaintiff wants the Defendants to provide him with a free copy of his medical and mental health records. Dkt. No. 52 at 6. Plaintiff claims that the medical release that he signed authorizing release of the records to the Defendants also entitled Plaintiff to receive free copies. *Id.* Defendants object, stating that the medical release did not indicate that Plaintiff would receive a free copy. Dkt. No. 56 at ¶ 20. Moreover, Defendants argue that "litigants must fund their own discovery" and, in any event, Plaintiff "is free to review his own medical records." The Court has reviewed the medical release executed by Plaintiff. *See* Dkt. No. 56, Ex. D. The release does not entitle Plaintiff to receive a free copy of his health care records.

Furthermore, neither Fed.R.Civ.P. 34, nor 28 U.S.C. § 1915, which governs proceedings *in forma pauperis,* [4] requires a defendant to assist in financing the cost of litigation incurred by a party bringing suit against it. *Williams v. Coughlin,* No. 95-CV-1737, slip op. at 2-3 (N.D.N.Y. May 31, 1996) (Pooler, J.) ("[C]opying and/or witness expenses are not included among the delineated expenses for which the Court can direct payment."); *Billups v. West,* No. 95 Civ. 1146, 1997 WL 100798, at *7 (S.D.N.Y. Mar. 6, 1997). Defendants' obligations under Rule 34 extend only to the requirement of providing such documents for inspection and, if requested, for photocopying at Plaintiff's expense. The Court therefore directs the Defendants to, **within 30 days** of the date of this Order, produce for Plaintiff's **inspection** at Plaintiff's current correctional facility a copy of Plaintiff's medical records, and any of Plaintiff's mental health records *that the facility maintains.* If Plaintiff wishes to obtain actual copies of any of the records made available to him for inspection, he shall bear the cost of such copies.

[4]    The Court notes that Plaintiff was granted *in forma pauperis* status under 28 U.S.C. § 1915, on July 9, 2004. Dkt. No. 13.

### E. Oral Depositions of Defendants

Plaintiff seeks to take oral depositions of Defendants. Dkt. No. 52 at 10-14. However, he states that he could not afford to hire a court reporter and that, in any event, there is no need for one. *Id.* Rather, he proposes to record the depositions with a video-camera to be provided by his family. *Id.* He states

that either his brother or a correctional employee (or court employee) could operate the video-camera. *Id.* If the video-camera were operated by a correctional employee (or court employee), Plaintiff states that he could pay for the cost of the video tapes *only;* he states that he could not afford to pay any other costs associated with a normal oral deposition. *Id.* Implicit in this proposal is an argument that either Defendants or the Court should pay those other costs. To accomplish the proposed depositions, Plaintiff requests that the Court order Defendants to enter a written stipulation, pursuant to Rule 29 of the Federal Rules of Civil Procedure, modifying the procedures ordinarily governing depositions. *Id.*

**\*4** Defendants object for two reasons. Plaintiff never served a notice of deposition upon any of the Defendants **prior** to the expiration of the discovery deadline, therefore he is now barred from conducting such discovery. [5] Dkt. No. 56 at ¶ 24. Additionally, Defendants contend that Plaintiff's proposed deposition procedure does not comport with the Federal Rules of Civil Procedure. *Id.* at ¶ 25.

[5]    The discovery deadline expired on December 30, 2005. *See* Dkt. No. 51.

The Court agrees with both arguments advanced by Defendants. The Court would add only two points. First, Plaintiff has not shown cause for the rather extraordinary relief he requests-an order directing Defendants to enter into a written stipulation dispensing with the requirement that a deposition be preceded by the administration of an oath, [6] and shifting the cost of several depositions from Plaintiff to Defendants or the Court. [7] Nor has Plaintiff shown that such an order would even result in the production of evidence that is admissible during trial or any summary judgment motion (i.e., *sworn* deposition testimony that is free of any "chain of custody" concerns resulting from, for example, the videotaping being conducted by Plaintiff's family members).

[6]    *See* Fed.R.Civ.P. 28(a), 30(b)(4).

[7]    *See, e.g.,* Fed.R.Civ.P. 30(b)(2).

Second, Plaintiff's argument that he should be excused from the requirements of having to pay the costs of a deposition because he is a "poor plaintiff" is unpersuasive. *See* Dkt. No. 52 at 12. Although Plaintiff has been granted *in forma pauperis* status under 28 U.S.C. § 1915, such status does not relieve him of the duty to pay his share of the cost of discovery (or somehow shift that cost to either Defendants

or the Court). Rather, being granted *in forma pauperis* status affords an inmate only certain benefits, namely, the right to be able to "proceed" in a matter without *prepaying* certain "fees and costs." [8] These "fees and costs" do not include the costs of taking part in discovery. For example, a litigant proceeding *in forma pauperis* does not have a right to a waiver of (1) the cost of a deposition stenographer, [9] (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal Rules of Civil Procedure, [10] or (3) the copying cost of any deposition transcripts. [11]

[8]    See 28 U.S.C. § 1915.

[9]    See *Benitez v. Choinski,* 05-CV-0633, 2006 WL 276975, at *2 (D.Conn. Feb. 2, 2006); *Tajeddini v. Gluch,* 942 F.Supp. 772, 782 (D.Conn.1996); *Doe v. U.S.,* 112 F.R.D. 183, 185 (S.D.N.Y.1986); *Toliver v. Community Action Com. to Help Economy, Inc.,* 613 F.Supp. 1070, 1072 (S.D.N.Y.1985), *aff'd without opinion,* 800 F.2d 1128 (2d Cir.1986), *cert. denied,* 479 U.S. 863 (1986); *Ebenhart v. Power,* 309 F.Supp. 660, 661 (S.D.N.Y.1969).

[10]    See 28 U.S.C.1915(d) ("Witnesses shall attend as in other cases...."); N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Malik v. Lavalley,* 994 F.2d 90, 90 (2d Cir.1993) (affirming dismissal of complaint by Di Bianco, M.J ., N.D.N.Y.); *Milton v. Buffalo Eng'g, P.C.,* 03-CV-0472, 2004 WL 1179336, at *1 (W.D.N.Y. May 27, 2004); *Fridman v. City of New York,* 195 F.Supp.2d 534, 535 (S.D.N.Y.2002); *Smith v. Gracie Square Hosp.,* 96-CV-1327, 1997 WL 698183, at *2 (S.D.N.Y. Nov. 10, 1997); *Malsh v. Police Dep't of City of N .Y.,* 92-CV2973, 1995 WL 296735, at * 1 (S.D.N.Y. May 16, 1995); *Toliver v. Community Action Com. to Help Economy, Inc.,* 613 F.Supp. 1070, 1072 (S.D.N.Y.1985), *aff'd without opinion,* 800 F.2d 1128 (2d Cir.1986), *cert. denied,* 479 U.S. 863 (1986); *Gonzalez v. Fenner,* 128 F.R.D. 606, 607-608 (S.D.N.Y.1989).

[11]    See N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Smith v. Buffalo Bd. of Educ.,* 96-CV-0229, 1997 WL 613255, at *2 (W.D.N.Y. Oct. 2, 1997).

Accordingly, the Court finds that Plaintiff's belated request for discovery should be **denied** for each of the above-stated reasons.

### F. Photograph of Plaintiff Taken upon Arrival at Great Meadow

Plaintiff asks for a copy of his picture taken upon arrival at Great Meadow to demonstrate that he was wearing eyeglasses upon his arrival. Dkt. No. 52 at 15. Defendants oppose the request, indicating that Plaintiff has not demonstrated the need for or relevance of the photograph. Dkt. No. 56 at ¶ 28. Plaintiff, however, states that the cuts that he received in his temple area will be consistent with the shape of the glasses he was wearing, demonstrating that he was kicked on both sides of the head while lying face down. Dkt. No. 52 at 15. In their response to the original discovery request, Defendants also asserted that any such photograph no longer exists because "[r]ecords reflecting inmate arrivals and internal inmate moves are discarded after three years." Dkt. No. 57, Ex. E, ¶ 1. Since the Court cannot require a party to produce something that does not exist, this aspect of Plaintiff's motion is **denied.**

### G. List of All Persons at Great Meadow on August 17, 2000

**\*5** Plaintiff asked for a list of all persons at Great Meadow on the date of his arrival-August 17, 2000-for purposes of identifying possible witnesses. Dkt. No. 52 at 16. The Court finds the request to be overly broad and agrees with the Defendants that it constitutes a "fishing expedition." Plaintiff's motion is **denied** in this regard. *See Messier v. Southbury Training School,* No. 3:94-CV-1706, 1998 WL 136170, at *6 (D.Conn. Jan. 30, 1998) (discovery "fishing expedition[s]" are "disfavored by courts") (citations omitted).

### III. SECOND MOTION TO COMPEL

#### A. DOCS Directive 4943

Plaintiff alleges that Defendants refused to give him a copy of DOCS Directive 4943 (in effect on 8/17/00) which sets forth guidelines for hand-held video-taping. Dkt. No. 54 at 1. Defendants oppose the request, indicating that Plaintiff never included such a request in his discovery materials. Dkt. No. 56 at ¶ 38. Defendants also assert that "the directive is labeled confidential for security reasons, and cannot be released to inmates absent a court order." *Id.* Because of the confidential nature of the directive sought, and Plaintiff's failure to establish how DOC's video-taping policies are relevant to Plaintiff's underlying claims or likely to lead to the discovery of admissible evidence, this portion of Plaintiff's motion is **denied.**

**B. DOCS Directive Relating to Pin-Pull Devices**

Plaintiff asks for "the directives[,] ... dictates[,] and data on the pin pull device[,] its register[,] and [everything] that will show and prove that [,] once the correction officers involved in [the] incident pulled [the] pin [,] ... an alarm [indicating] that [an] officer [was] in distress went out and caused ... correction officers from all areas to converge/respond to [the] area in which [the] incident occurred." Dkt. No. 54 at 3. Plaintiff indicates that he needs this information to show who arrived at the location of the alleged incident and the speed of the response by the correction officers. *Id.* Defendants oppose the request. Defendants presume that Plaintiff is referring to the "pin" on radios carried by correction officers, which are "pulled" to call for emergency assistance. Dkt. No. 56 at ¶ 39. Defendants argue that any information produced in response to this request "is not material or necessary to any claim in plaintiff's Complaint. There is no allegation that the pin was pulled in violation of his constitutional rights, and those who responded are identified in the Unusual Incident Report which has been provided." *Id.*

While the Court is unable to determine, with complete clarity, Plaintiff's need for copies of the directives requested, since Defendants provide little justification for not providing copies of such directives, this aspect of Plaintiff's motion is **granted.** The Defendants are directed to, **within 30 days,** produce to Plaintiff a copy of any DOCS Directives governing the use of emergency pull "pins" on correctional officer's radios as well as any Directives governing the response to receipt of an emergency call through the use of such "pins."

**C. Blueprints of the Prison**

**\*6** Plaintiff requests blueprints of Great Meadow so that he can "demonstrate/illustrate" where everyone was when the alleged incident occurred and where all of the correctional officers came from." Dkt. No. 54 at 3-4. Because Plaintiff has already been provided with a drawing of the area at which the alleged incident occurred, *see* Dkt. No. 56 at Ex. B, and given the security concerns with releasing to an inmate the blueprint of the entire facility, this request is **denied.**

**D. Names and Addresses of Everyone at Great Meadow on August 17, 2000, and Photographs of Everyone at Great Meadow on August 17, 2000**

The Court finds these requests to be overly broad and constitute a "fishing expedition." Plaintiff's motion is **denied** as to these requests. *See Messier,* 1998 WL 136170, at *6 (discovery "fishing expedition[s] are "disfavored by courts") (citations omitted).

**E. Assistance in Serving Defendant Englese with Process**

Plaintiff seeks assistance in locating or serving Defendant Englese with service of process. Dkt. No. 54 at 6. Plaintiff indicates that Defendant Englese, a former Correctional Officer at Great Meadow, is retired. *Id.* Defendants oppose the request stating that the Attorney General's Office "does not represent Mr. Englese and has no obligation to provide assistance to [Plaintiff's] prosecution of this lawsuit." Dkt. No. 56 at ¶ 43.

The Court acknowledges that Defendants perhaps have little or no obligation to assist Plaintiff with the prosecution of his lawsuit and appreciates that Defendants would be understandably hesitant to provide an incarcerated inmate with the home address or any other similar personally identifiable information regarding a past corrections worker. The Court also appreciates, however, the dilemma facing the Plaintiff, who for lack of the information now sought has been unable to effectuate service of process upon that Defendant. In order to balance these competing concerns, the Court will request that the Attorney General, acting on behalf of the DOCS, make an effort to contact F. Englese through any information available to that agency, and determine whether they will be permitted to waive service on behalf of the Defendant and appear on his or her behalf. The Attorney General is directed to contact the Court **within thirty days** of the date of this order and advise as to whether or not his office will be authorized to waive service and appear on behalf of that Defendant. In the event that such an authorization is not forthcoming, the Court will consider appropriate alternatives including, potentially, the requirement that the DOCS provide

2006 WL 2516485

the information directly to the court, for use in arranging for service upon that Defendant by the United States Marshal's Service.

**ACCORDINGLY,** it is

ORDERED that Plaintiff's motions to compel (Dkt. Nos. 52 and 54) are ***GRANTED*** in part and ***DENIED*** in part, as set forth above in Parts II and III of this Order. Defendants must serve supplemental responses and/or produce required documents within ***THIRTY (30) DAYS*** of the filing date of this Order.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2516485

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:03cv01010**<br>MURRAY v. STATE OF NEW YORK, ET AL | — | N.D.N.Y. | Aug. 14, 2003 | Docket |

**History (4)**

**Direct History (2)**

1. Murray v. Palmer
   2006 WL 2516485 , N.D.N.Y. , Aug. 29, 2006

   *Reconsideration Denied by*

2. Murray v. Palmer
   2007 WL 1237679 , N.D.N.Y. , Apr. 27, 2007

**Related References (2)**

3. Murray v. Palmer
   2008 WL 2522324 , N.D.N.Y. , June 20, 2008

4. Murray v. Palmer
   2010 WL 1235591 , N.D.N.Y. , Mar. 31, 2010

Case 9:22-cv-01178-DNH-MJK    Document 116    Filed 04/02/25    Page 19 of 25

Sitts v. Simmonds, Not Reported in Fed. Supp. (2021)

2021 WL 1853642

2021 WL 1853642
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James C. SITTS, Plaintiff,
v.
SIMMONDS; Cory Bene, Officer of Corrections;
Biggar, Sergeant; and Goff, Corporal, Defendants.

9:20-CV-1475 (TJM/ML)
|
Signed 05/06/2021

**Attorneys and Law Firms**

JAMES C. SITTS., Plaintiff, Pro Se, Otsego County
Correctional Facility, 172 County Hwy 33W, Cooperstown,
New York 13326.

OF COUNSEL: FRANK W. MILLER, THOMAS J.
MURPHY, THE LAW FIRM OF FRANK W. MILLER,
Counsel for Defendants, 6575 Kirkville Road, East Syracuse,
New York 13057.

**DECISION and ORDER**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** Currently pending before the Court in this civil rights
action filed by inmate James C. Sitts ("Plaintiff"), who is
proceeding *pro se* and *in forma pauperis*, is Plaintiff's Motion
to Compel. (Dkt. No. 24.)

Plaintiff filed this matter on December 2, 2020, generally
alleging Eighth Amendment claims against Simmonds, Bene,
Biggar, and Goff ("Defendants") relating to an incident that
occurred at the Delaware County Correctional Facility while
Plaintiff was confined there.[1] (Dkt. No. 1.) The Court issued
a scheduling order on March 19, 2021 and set the close of
discovery for September 20, 2021. (Dkt. No. 22 at 5.)

[1]    On January 13, 2021, the Court dismissed
       Delaware County Correctional Facility as a
       Defendant. (Dkt. No. 8 at 10) On April 21, 2021,
       Plaintiff notified the Court that his new address was
       at the Otsego County Correctional Facility. (Dkt.
       No. 25.)

Plaintiff now seeks to compel Otsego County Correctional
Facility ("Otsego County C.F.")—the facility where Plaintiff
is currently confined but is a non-party to this action—to
transport Plaintiff to "an eye examination ... by an outside
facility optometrist of my choosing." (Dkt. No. 24 at 3.)
Plaintiff argues that he made multiple requests to see an
outside eye doctor, but in response, "the medical staff ... has
me see the facility doctor who is not an actual eye doctor and
they have me read the eye chart and shine[ ] a light in my
eye." (*Id.* at 2.) Plaintiff seeks the outside examination "as
evidence of injury" in his case. (*Id.* at 1.) Plaintiff's motion
states no particulars regarding the doctor or facility he wants
to visit, or how he proposes to pay for the costs associated
with transportation and the examination.

In response, Defendants argue that Plaintiff is not entitled to
shift the costs associated with being examined by an outside
doctor to a non-party. (Dkt. No. 26 at 2.) Defendants also
note that Plaintiff admits that when he requested to see an eye
doctor, he was permitted to visit the medical staff at Otsego
County C.F. and Delaware County Correctional Facility. (*Id.*)

The Court denies Plaintiff's motion for the following reasons.
First, Plaintiff fails to demonstrate the reasons why he must
visit an outside facility for an eye examination as opposed to
having a doctor of his choosing come to Otsego County C.F.
to examine him. Second, Plaintiff's motion appears to request
that the cost of his transportation and medical examination
be assumed by a non-party to this case, Otsego County C.F.
However, as the Court has already advised,[2] that Plaintiff
proceeds *pro se* and *in forma pauperis* does not relieve him
of the obligation to pay all costs and fees associated with
prosecuting his claims, including the costs associated with
discovery of evidence. *See Malik v. Lavalley*, 994 F.2d 90,
90 (2d Cir. 1993) ("[F]ederal courts are not authorized to
waive or pay witness fees on behalf of an *in forma pauperis*
litigant."); *Koehl v. Greene*, 06-CV-0478, 2007 WL 4299992,
at *3 (N.D.N.Y. Dec. 6, 2007) (Lowe, M.J.) ("Although
Plaintiff has been granted *in forma pauperis* status under
28 U.S.C. § 1915, such status does not relieve him of the
duty to pay his share of the cost of discovery [ ]or somehow
shift that cost to either Defendant or the Court[ ].") In
addition, Plaintiff has not shown good cause, and the Court
is unaware of any authority, that would justify shifting the
costs associated with a medical examination to a non-party.
Indeed, courts are instructed to avoid imposing undue burden
or expense on non-parties. *See, e.g., Bernier v. Koenigsmann*,
17-CV-254, 2020 WL 1950873, at *4 (N.D.N.Y. Apr. 23,
2020) (Baxter, M.J.) (recognizing that, in the context of

2021 WL 1853642

a subpoena of a non-party, "the court must be especially mindful of avoiding undue burden or expense on third parties.") (citing Fed. R. Civ. P. 45(d)(1)).

2     As Judge Thomas J. McAvoy stated in his January 13, 2021 Decision and Order granting Plaintiff's request to proceed *in forma pauperis*, "Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees." (Dkt. No. 8 at 9 n.4.)

**\*2  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's Motion to Compel (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1853642

---

**End of Document**            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:20-CV-01475**<br>Sitts v. Delaware County Correctional Facility et al | — | N.D.N.Y. | Dec. 02, 2020 | Docket |

**History (5)**

**Direct History (1)**

1.  Sitts v. Simmonds 🐾
    2021 WL 1853642 , N.D.N.Y. , May 06, 2021

**Related References (4)**

2.  Sitts v. Delaware County Correctional Facility
    2021 WL 12157651 , N.D.N.Y. , Jan. 13, 2021

3.  Sitts v. Simmonds
    2021 WL 12157650 , N.D.N.Y. , Feb. 02, 2021

4.  Sitts v. Simonds
    2022 WL 2670213 , N.D.N.Y. , May 11, 2022

    *Report and Recommendation Adopted by*

5.  Sitts v. Simonds 🐾
    2022 WL 2666909 , N.D.N.Y. , July 11, 2022

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01178-DNH-MJK   Document 116   Filed 04/02/25   Page 23 of 25

Sitts v. Simonds, Not Reported in Fed. Supp. (2022)

2022 WL 2666909

2022 WL 2666909
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James C. SITTS, Plaintiff,
v.
SIMONDS, Cory Bene, Officer of Corrections;
Biggar, Sergeant, and Goff, Corporal, Defendants.

9:20-CV-1475 (TJM/ML)
|
Signed July 11, 2022

**Attorneys and Law Firms**

James C. Sitts, Coxsackie, NY, Pro Se.

Frank W. Miller, Thomas J. Murphy, The Law Firm of Frank
W. Miller, East Syracuse, NY, for Defendants.

**DECISION & ORDER**

Thomas J. McAvoy, Senior United States District Judge

*1 Plaintiff filed this action pursuant to 42 U.S.C. §
1983, alleging that Defendants, Officers at the Delaware
County Correctional Facility in Delhi, New York, violated
his constitutional rights by using excessive force against him,
acting with deliberate indifference to a serious medical need,
and retaliating against him for filing grievances. The Court
referred the matter to the Hon. Miroslav Lovric, United States
Magistrate Judge, for a Report-Recommendation pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation, dated May 11, 2022,
recommends that the Court grant Defendants' motion for
summary judgment in part and deny the motion in part.
See dkt. # 49. Judge Lovric recommends that the Court
deny Defendants' motion with respect to any excessive force
and failure to protect claims against Defendants Simonds
and Bene and any deliberate indifference to serious medical
needs claims against Defendant Simonds. Judge Lovric also
recommends that the Court grant the motion with respect to

any claims for First Amendment retaliation. Having examined
the evidence, Judge Lovric finds that questions of fact remain
as to whether Simonds and Bene used excessive force when
they used pepper spray and other methods to handcuff
Plaintiff in his cell and whether Simonds unnecessarily
delayed medical treatment to Plaintiff after using pepper spray
to subdue him.

Defendants filed objections to the Report-Recommendation.
See dkt. # 50. When a party objects to a magistrate
judge's Report-Recommendation, the Court makes a "*de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made." See 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions." Id.

Having reviewed the record *de novo* and having considered
the other issues raised in Defendants' objections, this Court
has determined to accept and adopt the recommendation
of Judge Lovric for the reasons stated in the Report-
Recommendation. Defendants' objections ask the Court to
accept their version of the events in question. Resolving
factual disputes is the province of the jury.

It is therefore **ORDERED** that Plaintiff's objections to the
Report-Recommendation of Magistrate Judge Lovric, dkt. #
50, are hereby OVERRULED. The Report-Recommendation,
dkt. # 49, is hereby ACCEPTED and ADOPTED.
Defendants' motion for summary judgment, dkt. # 43,
is hereby GRANTED IN PART and DENIED IN PART.
The motion is GRANTED with respect to Plaintiff's First
Amendment retaliation claim and DENIED with respect to: 1)
Plaintiff's excessive force and failure to protect claims against
Defendants Simonds and Bene and 2) Plaintiff's deliberate
indifference claims against Defendant Simonds.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2666909

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:20-CV-01475**<br>Sitts v. Delaware County Correctional Facility et al | — | N.D.N.Y. | Dec. 02, 2020 | Docket |

**History (5)**

**Direct History (2)**

1.  Sitts v. Simonds
    2022 WL 2670213 , N.D.N.Y. , May 11, 2022

    *Report and Recommendation Adopted by*

    2.  Sitts v. Simonds
        2022 WL 2666909 , N.D.N.Y. , July 11, 2022

**Related References (3)**

3.  Sitts v. Delaware County Correctional Facility
    2021 WL 12157651 , N.D.N.Y. , Jan. 13, 2021

4.  Sitts v. Simonds
    2021 WL 12157650 , N.D.N.Y. , Feb. 02, 2021

5.  Sitts v. Simonds
    2021 WL 1853642 , N.D.N.Y. , May 06, 2021