## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Ako K. Burrell

               Plaintiff,

     v.                                9:22-CV-1178
                                      (DNH/MJK)


Donald Uhler, *et. al.*

               Defendants.

---

Ako K. Burrell, Plaintiff, *pro se*
Rachel Ouimet, Esq., Asst. Attorney General, for Defendants

Mitchell J. Katz, United States Magistrate Judge

To the Honorable David N. Hurd, U.S. District Court Judge:

### REPORT-RECOMMENDATION

    Senior United States District Court Judge David N. Hurd referred Defendants' motion for partial summary judgment to the Court for report and recommendation.[1] In this *pro se* civil rights action, Burrell alleges that Defendants violated his First and Eighth Amendment rights on numerous occasions. For the following reasons, this Court

---

[1] The District Court has the authority to refer dispositive motions to this Court under 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

1

recommends granting Defendants' motion for partial summary judgment.[2]

## I.    BACKGROUND

### A. Facts

At all relevant times, Burrell was an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") housed at Upstate Correctional Facility ("Upstate C.F."), and Defendants were employed at Upstate C.F. (Def. Statement of Material Facts ("SOMF"), Dkt. 127-5, ¶¶ 1,3).

### 1. July 21, 2022 incident

On July 21, 2022, while Burrell was being transferred to 10 Building, Defendant Teneyck—who was not working that day because it was his regular day off—told Burrell "until you stop filing grievances on Sgt. Bullock, drop those Article 78; Habeas Corpus; Court of Claim [actions] against Donnelly, Hess, Dumas, Superintendent Bishop and Uhler, your [sic] not getting your Quran, mail, pictures, it's not

---

[2] Defendants do not move for summary judgment as to Burrell's Eighth Amendment excessive force and failure to intervene claims against Boyer, Smutz, Chase and Martin as alleged in paragraphs 43, 44, and 57 of Burrell's Complaint. (Def. Mem. of Law, p. 2, fn. 3, Dkt. 127-1).

happening." (Complaint ("Compl."), Dkt. 1, at¶42,); (Def. SOMF, Dkt. 127-5, at ¶ 12).

### 2. July 27, 2022 incident

On July 27, 2022, while Burrell was handcuffed and being escorted to 11 Building, Defendant Boyer "grabbed the handcuff[,] held them, used his free hand to pull down [Burrell's] waistband down from [his] pants, and then [his] boxers, and then [Defendant Boyer] used his hand to examine [Burrell's] anal cavity." (Compl., Dkt. 1, at ¶ 43). That same day, DOCCS created a Use of Force document noting an incident involving Defendants Smutz, Chase, Seymour, Welch, Bronson, and Burrell. (Def. SOMF, Dkt. 127-5, at ¶ 27).

### 3. August 7, 2022 incident

On August 7, 2022, Burrell submitted an "Inmate Claim Form" alleging that Defendant Tupper—who was not working on the day of the incident—removed papers from his cell. (Compl., Dkt. 1, at ¶48); (Def. SOMF., Dkt. 127-5, at ¶¶43, 44). During this incident, Burrell informed Defendant Tupper that "he needed those documents as Exhibits in an Article 78 to redeem his good time loss . . . and to seek employment upon release." (Compl., Dkt. 1, at ¶48). In response,

"Defendant Tupper replied, 'well how about you drop your court shit against my bosses, if not this shit is going in the garbage.' He then threw the documents in the trash." *Id.* (cleaned up).

### 4. August 8, 2022 incident[3]

On August 8, 2022, Defendant Smutz threatened to tie Burrell up and "let [him] get fucked real good" unless he dropped his complaints. (*Id.* at ¶49). Burrell reported the threat to Hana, but Hana replied, "well you deserve it, I'm not reporting nothing." (*Id.*). [4]

About an hour or two later, Defendants Smutz, Vesneske, Chase and Yando began transferring Burrell from cell 10-A-5 to cell 10-B-8. (*Id.*). Once Defendants ordered Burrell to exit cell 10-A-5, they placed him in mechanical constraints, and then Defendant Vesneske instructed Defendants Chase and Yando to "drag [Burell] down the company" and "destroy his paperwork." (*Id.* at ¶50). Defendants Chase and Yando then "punched [Burrell] in the ribs, until he fell, . . . placed

---

[3] While the Complaint alleges that this event took place on August 14, 2022, in response to Defendants' SOMF, Burrell admits that the use of force incident took place on August 8. (Def. SOMF., Dkt. 127-5, at ¶ 58; Burrell SOMF, Dkt. 133, ¶ 58).

[4] On February 15, 2023, Hana was terminated as a Defendant in this action. (Dkt. 9).

him in a body hold, [which] caused his hands, that were handcuffed behind his back, to be held up behind his head" dislocating [both shoulders.]" (*Id.*). Defendant Vesneske then asked Burrell: "'[a]re you going to drop those motions now?'" (*Id.* at ¶51). Burrell did not respond. (*Id.*).

After this, Defendants Vesneske and Smutz ordered Defendants Chase and Yando to ram [Burrell's] face into the cell wall of B-Company 8 cell. (*Id.*). Following orders, Defendants brought Burrell to another cell and rammed his face into the cell wall (*Id.*). After that, Defendants Chase, Dumas, and Yando dragged Burrell into the cell and "began punching, kicking, [and] spitting on him." (*Id.* at ¶52).

Finally, Defendants Yando, Dumas and Chase used strips from a torn shirt to "hog-tie" Burrell. (*Id.* at ¶53). Both Defendants Dumas and Yando removed Burrell's clothes then and one of those Defendants bit Burrell's penis causing it to bleed. (*Id.*). Then, Defendant Chase, under Defendant Smutz's orders, penetrated Burrell's anal cavity, causing it to bleed. (*Id.*). Burrell claims that he was denied medical treatment for these injuries. (*Id.* at ¶ 54).

The same day, DOCCS created a Use of Force document noting that Defendants Smutz, Vesneske, Chase, and Yando were present for a use of force incident involving Burrell. (Def. SOMF, Dkt. 127-5, at ¶ 58). Burrell admits that Defendant Dumas did not have any involvement in this Use of Force incident. (Burrell SOMF, Dkt. 133, at ¶59).

Defendant Smutz authored an Incarcerated Individual Misbehavior Report, charging Burrell with refusing a direct order, violent conduct, movement regulation violation, interference with employee, and threats. (Def. SOMF, Dkt. 127-5, at ¶60).

### 5. August 31, 2022 incident

On August 31, 2022, Burrell alleges that Defendants Burroughs and Demers—who Burrell admits were not working on that date— refused to provide him with photocopies for his Article 78 proceeding until he dropped "the Art. 78, Habeas Corpus, Court of Claim [actions] against Uhler [and] Bishop," and the grievances Burrell filed on the 24th. (Compl., Dkt. 1, at ¶ 56); *see also* (Burrell's SOMF, Dkt. 133, at ¶ 70). Defendants Burroughs' and Demers' purported refusal caused Burrell to miss a filing date in Albany County Court. *Id.*

### 6. September 1, 2022 incident

On September 1, 2022, while Burrell was waiting to attend Residential Rehabilitation Unit ("RRU") programing, he "stuck his hands out [] to Defendants A. Martin and Rowe." (Compl., Dkt. 1, at ¶57). In response, Defendants Martin and Rowe told Burell "your [sic] not going to program, nigger, you wrote grievance[s] [about] Sgt. Bullock, . . . and filed Art. 78, Habeas Corpus & Court [of] Claim [actions] against Uhler [and] Bishop[.]" *Id.* Defendants Rowe and Martin then sprayed Burrell with "OC spray." (*Id.*). Burrell alleges that this incident "caused a Tier III appeal to be destroyed" and he lost vision in his right eye. (*Id.*).

### B. Procedural History

On November 10, 2022, Burrell commecned this action by filing a Complaint. (Compl., Dkt. 1). On February 15, 2023, Senior Judge Hurd reviewed the Complaint, under 28 U.S.C. §1915, and dismissed all claims, except Burrell's: (i) Eighth Amendment excessive force and failure to intervene claims against Defendants Boyer, Welch, Seymour, Chase, Smutz, Vesneske, Yando, Dumas, and Martin; (ii) Eighth Amendment deliberate indifference to medical needs claim against

Defendant Fleurny;[5] and (iii) First Amendment retaliation claims against Defendants Teneyck, Fluerny, Welch, Seymour, Chase, Smutz, Uhler, Bronson, Tupper, Vesneske, Yando, Dumas, Burroughs, Demers, and Martin.[6]

Defendants now move for partial summary judgment. (Dkt. 127). Specifically, Defendants seek summary judgment on: (1) Burrell's First Amendment retaliation claims against Defendants Teneyck, Welch, Chase, Seymour, Smutz, Bronson, Uhler, Tupper, Vesneske, Yando, Dumas, Burroughs, Demers and Martin; and (2) Burrell's Eighth Amendment excessive force and failure to intervene claims against Welch, Seymour, Smutz, Vesneske, Yando and Dumas.

---

[5] Defendant Fleurny was not served in this action. The Office of the New York State Attorney General does not represent Defendant Fleurny and will not be addressing any claims against Defendant Fleurny in this motion. (*See* Def. Mem. of Law, pg. 3, fn. 2). Because Burrell failed to timely serve Defendant Fleurny, the Court *sua sponte* dismisses the action against him without prejudice. *See* Fed. R. Civ. P. 4(m).

[6] The names of Defendants Vesneske, Yando, Teneyck, Bronson and Demers are misspelled in the Complaint. The Court refers to each individual with the correct spelling of their names. (Dkt. 127-1, Def. Mem., at fn. 2).

## II.    STANDARD OF REVIEW

### Summary Judgment

"Summary Judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (cleaned up). When deciding if there is a genuine issue of material fact, courts "must view the evidence in the light most favorable to the" non-moving party. *Id.* at 656 (cleaned up). Likewise, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Kessler v. Westchester County Dep't of Social Services,* 461 F.3d 199, 206 (2d Cir. 2006). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.,* 475 U.S. at 586. "The

9

nonmoving party may not rely on mere conclusory allegations nor speculation but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145,149 (2d Cir. 1998) (cleaned up).

"If the defendant in a run-of-the-mill civil case moves for summary judgment," judges "must ask" themselves "not whether" they "think the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook,* 691 F.3d 226, 230 (2d Cir. 2012).

## III.   GENERALLY APPLICABLE LAW

Section 1983 establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (cleaned up). "Section 1983 itself

creates no substantive rights, it only creates "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). "To establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (cleaned up).

## IV.   DISCUSSION

The Court recommends that the District Court grant Defendants' motion for partial summary judgment and dismiss Burrell's Complaint. The Court first recommends the District Court adopt Defendants' SOMF as true because Burrell failed to comply with Local Rule 56.1(b). Next, the Court recommends the District Court find that Burrell failed to exhaust the administrative remedies that Upstate C.F. made available to him. Burrell's Complaint must therefore be dismissed.

### A. The District Court should adopt Defendants' SOMF as true because Burrell failed to comply with Local Rule 56.1(b).

The District Court should adopt Defendants' SOMF as true. *Pro se* litigants are notified that the failure to comply with the Northern

11

District's local rules can result in the adoption of their opposition's SOMF if the SOMF is well supported. Here, Burrell did not comply with Local Rule 56.1(b) and Defendants' SOMF is well supported. As a result, this Court recommends the District Court adopt Defendants' SOMF as true.

"While courts are required to give due deference to a plaintiff's *pro se* status, that status 'does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Jackson v. Moore*, No. 9:21-CV- 1001 (GTS/ATB), 2023 WL 4710869, at *2 (N.D.N.Y. Apr. 14, 2023) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)), *report and recommendation adopted*, 2023 WL 4711091 (N.D.N.Y. July 24, 2023). "Where a party has failed to respond to the movant's statement of material facts as required by Local Rule 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the non-movant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion." *Id.* (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

12

Accordingly, when a party moves for summary judgment against a *pro se* litigant, either the movant or the district court must provide the *pro se* litigant with notice of the consequences of failing to respond to the motion. *See Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620 (2d Cir. 1999). Courts in this district have routinely held that when such notice is provided and a *pro se* plaintiff fails to respond to a motion for summary judgment, the court may accept the defendant's factual assertions as true to the extent they are supported by the evidence in the record. *See, Jackson,* 2023 WL 4710869 at *2; *see also Price v. Oropallo,* 9:13-CV-563 (GTS/TWD), 2014 WL 4146276, at *5 (N.D.N.Y. Aug. 2014) ("An unopposed summary judgment motion may properly be granted only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law.") (cleaned up).[7]

Burrell failed to comply with Local Rule 56.1(b). On May 6, 2025, Defendants served Burrell with their motion for partial summary

---

[7] In *Burrell v. Global Tel Link, et al.*, No. 9:24-cv-1377 (BKS/TWD) (N.D.N.Y. Dec. 23, 2024), Chief United States District Judge Brenda K. Sannes revoked Burrell's special status as a *pro se* civil rights litigant.

judgment and a Notification of Consequences of Failing to Respond to a Summary Judgment Motion. (Dkt. 127). Although Burrell responded to the motion, his response to Defendants' SOMF is deficient because he failed to comply with Local Rule 56.1(b) by not citing to the record to support his denials of Defendants' factual assertions. *See* (Dkt. 133); *see also Lee v. City of Troy*, 520 F. Supp. 3d 191, 198 (N.D.N.Y. 2021) ("Because a naked denial of a fact the movant claims to be undisputed would do little to help the Court, the opposing party must support every denial with a citation to record evidence supporting a genuine dispute of material fact."). The District Court should therefore deem admitted any properly supported facts set forth in Defendants' SOMF that Burrell did not specifically controvert. *See* Local Rule 56.1(b).

## B. Burrell failed to exhaust the available administrative remedies.

The District Court should find that Burrell did not exhaust the available administrative remedies. Incarcerated individuals must exhaust the administrative remedies available to them before bringing claims about prison life to Federal Court. Here, there is no objective evidence that Burrell exhausted the administrative remedies available

14

to him. So this Court recommends that the District Court grant Defendants' motion for partial summary judgment.

The Prison Litigation Reform Act ("PLRA") governs federal civil rights litigation by incarcerated individuals. Under the PLRA, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (cleaned up). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (cleaned up). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (citations omitted). To exhaust administrative remedies, incarcerated individuals must complete all the administrative review procedures according to the rules applicable to the institution in which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). "Untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the

PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (cleaned up).

The PLRA's exhaustion requirement does not apply if the remedy is functionally unavailable to the incarcerated individual. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). There are three "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.

*First*, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citation omitted).

*Second*, "an administrative scheme" is unavailable, when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643-644. "When an administrative process is susceptible of multiple reasonable interpretations" the incarcerated individual "should err on the side of exhaustion." *Id.* at 644. "But when a remedy is . . . essentially 'unknowable' —so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* (citation omitted).

16

*Third*, an administrative procedure is unavailable when "prison administrators thwart" incarcerated persons "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

To begin, Defendants argue that Burrell did not exhaust the administrative remedies available to him. Specifically, Defendants contend that: (i) Burrell was housed at Upstate C.F. from April 12, 2022 to January 9, 2023, (ii) each of his claims are the proper subject of a grievance, (iii) Upstate C.F. had a fully functioning grievance program while Burrell was housed there, and (iv) a diligent search of DOCCS' records showed that Burrell did not file any grievances related to the legal claims he now brings. *See* (Debyah Decl., Dkt. 127-21, ¶¶ 12-20); (Debyah Decl. Exh. B., Dkt. 127-21, pgs. 11-14).

In opposition, Burrell argues that he exhausted the available administrative remedies by filing the following grievances:

- July 18, 2022 (UST-1156-22)(Retaliation/Req Removal from RRU) (GUID);

- July 18, 2022 (UST-1157-22)(Racial Slur/Retaliation);

- December 5, 2022 (UST-2411-22)(Unable to Make Law Lib Request);

- November 15, 2022 (UST-2239-22)(Missing Paperwork from Property);

- August 18, 2022 (UST-1496-22)(Sanctions Fabricated by Security Staff/Hit Ordered by Superintendent); and

- September 22, 2022 (UST-1790-22)(Copies Not Timely)

(Burrell SOMF, Dkt. 133, pg. 15, at ¶ 137); (Debyah Decl. Exh. B., Dkt. 127-21, pgs. 11-14).

Burrell's argument is unavailing. Although Exhibit "B" to Ms. Debyah's declaration establishes that Burrell did in fact file the above grievances, they do not, by description, relate to any claims remaining in this action. (Debyah Decl. Exh. B., Dkt. 127-21, pgs. 11-14). Fatal to Burrell's argument is that grievances UST-1156 and UST-1157 were filed three days before the July 21, 2022 incident. So they cannot support Burrell's contention that he exhausted his administrative remedies. Likewise, Grievances UST-2239 and UST-2411 were filed late. So, even if they were relevant to the claims in this action, these two grievances do not establish that Burrell exhausted the available administrative remedies. *See Ruggiero*, 467 F.3d at 176 (2d Cir. 2006) ("Untimely . . . attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.") (cleaned up).

18

Burrell also argues that Upstate C.F.'s grievance process was unavailable to him and was a dead end. Specifically, Burrell claims that the process is "flawed" because: (i) it takes "133 [days]" to receive an answer to a grievance, (ii) "DOCCS has no IGRC lockbox in any SHU/RRU as required by Directive 4040[8], rendering the grievance policy unavailable," and (iii) DOCCS staff intercepted the grievances that he mailed out. *See* (Burrell SOMF, Dkt. 133, ¶¶ 93-94); *see also* (Burrell Mem. of Law, Dkt. 133-1, at pgs. 11-12).[9]

Despite his assertions, Burrell cannot prove that Upstate C.F.'s grievance process was unavailable to him. To start, Burrell concedes that he bears the burden of proving that the grievance process is unavailable. *See* (Burrell Mem. of Law, Dkt. 133-1, at pg. 9); *see also* *Jenkins v. Cordero*, No. 17-CV-1592, 2019 WL 2121655 at *3 (S.D.N.Y. May 15, 2019). However, Burrell fails to meet this burden. Using the

---

[9] Directive 4040 does not require the presence of a lock box in RRU or SHU. While Directive 4040 is silent as to incarcerated individuals in the RRU, it does address those individuals in the SHU. Directive 4040, Section 701.7(b) (Procedures for incarcerated individuals in Special Housing Unites (SHU's)) states in relevant part that, "Where available, SHU incarcerated individuals shall use centrally located deposit boxes to send grievance forms and IGP correspondence to the IGP office …" 7 N.Y.C.R.R. § 701(b).

date parameters set forth by the Debyah Declaration (which includes the time within which to file a grievance and available extensions of time to do so), Burrell filed 80 grievances while housed at Upstate C.F. (Debyah Decl. Exh. B, Dkt. 127-21, pgs. 12-13). In fact, Burrell filed 15 grievances—between July 23, 2022 and August 13, 2022—while he was in SHU/RRU. (*Id.* at pgs. 12-14). Of the total 324 grievance appeals Burrell has filed with DOCCS, 122 of them were from Upstate C.F. (Seguin Decl., Dkt. 127-20, at ¶15). The evidence of a functioning grievance system at Upstate C.F. is overwhelming. *See Lara v. Semrau,* No. 22-CV-517-JLS-LGF, 2024 WL 5484504, at *6 (W.D.N.Y. Oct. 8, 2024) (cleaned up) ("records as those provided by Krygier and Seguin with personal knowledge of the inmate grievances and appeals filed provided by persons with direct knowledge of the IGP at correctional facilities have been found sufficient to support summary judgment based on an inmate's failure to exhaust administrative remedies.").

Frankly, the evidence belies Burrell's argument that the grievance process at Upstate C.F. was unavailable to him or a dead end. Burrell's prolific utilization of Upstate C.F.'s grievance process proves that the grievance process was available to him. *See Hall v. Annucci,* No. 22-

2031, 2023 WL 7212156, at *2 (2d Cir. Nov. 2, 2023) (summary order) (finding that the District Court correctly determined that the grievance process was available to the plaintiff because the plaintiff "previously used the [grievance process] to file several grievances, including for medical- and health-related issues, that resulted in relief.").

While Burrell is allowed to plead in the alternative, he may not plead alternative facts to support his inconsistent theories, which is exactly what he is doing. "Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit "inconsistent *assertions of facts* within the allegations." *XL Specialty Ins. Co. v. Otto Naumann, LTD.*, No. 12-CV-8224, 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015)) (citations omitted) (emphasis in original). Indeed, "there is a significant difference between pleading alternative theories of law based upon given facts and pleading alternative statements of fact to support a given principle of law." *United States v. Gotti,* 771 F.Supp. 535, 540 (E.D.N.Y.1991) (cleaned up). But here, Burrell ignores this significant difference. On the one hand, Burrell argues that he filed grievances UST-1156-22, UST-1157-22, UST-2411-22, UST-2239-22, UST-1496-22, and UST-1790-22 thereby exhausting the administrative

remedies available to him before commencing this action. (Burrell SOMF, Dkt. 133, at ¶137). On the other hand, Burell argues that his grievances were being intercepted. (*Id.* at ¶97). Burrell cannot have it both ways. There is simply insufficient evidence for a reasonable jury to find that Burrell has met his burden to prove that the grievance process was unavailable to him when he alleges that he filed grievances relevant to the claims in this action.

* * *

In sum, the Court recommends that the District Court find that Burrell failed to exhaust his administrative remedies prior to commencing this action. And because it is unequivocally evident that Burrell did not exhaust the administrative remedies available to him, the Court need not address Defendants' remaining arguments in support of their motion for partial summary judgment. *See Johnson v. New York City Dep't of Corr.*, No. 13-CV-6799, 2014 WL 2800753, *6 (S.D.N.Y. June 16, 2014).

## V. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that Defendants' motion for partial summary judgment (Dkt. 127) be **GRANTED IN ITS ENTIRETY**, and it is

**RECOMMENDED** that (1) Burrell's First Amendment retaliation claims against Defendants Teneyck, Welch, Chase, Seymour, Smutz, Bronson, Uhler, Tupper, Vesneske, Yando, Dumas, Burroughs, Demers and Martin, and (2) Burrell's Eighth Amendment excessive force and failure to intervene claims against Welch, Seymour, Smutz, Vesneske, Yando and Dumas be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that the action be **DISMISSED WITHOUT PREJUDICE** against Defendant Fleurny under Fed. R. Civ. P. 4(m), and it is

**ORDERED** that the Clerk provide Burrell with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: February 17, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

Case 9:22-cv-01178-DNH-MJK   Document 140   Filed 02/17/26   Page 25 of 75

Jackson v. Moore, Not Reported in Fed. Supp. (2023)
2023 WL 4710869

2023 WL 4710869
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dumar JACKSON, Plaintiff,
v.
N. MOORE, Defendant.

9:21-CV-1001 (GTS/ATB)
|
Signed April 14, 2023

**Attorneys and Law Firms**

DUMAR JACKSON, Plaintiff, pro se.

RACHAEL S. OUIMET, Assistant Attorney General, for Defendant.

### REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** In this pro se civil rights action, plaintiff alleges that the defendant violated his Eighth Amendment rights when he failed to protect plaintiff from another inmate. Presently before the court is defendant Correctional Officer ("C.O.") Moore's motion for summary judgment. (Dkt. No. 16). This matter has been referred to me for Report and Recommendation by United States District Judge Glenn T. Suddaby, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). For the reasons set forth below, this court will recommend granting defendant's motion and dismissing the complaint in its entirety.

## I. Background

### A. Procedural History
In this civil rights action, plaintiff alleges a constitutional violation occurred while he was incarcerated at Clinton Correctional Facility ("Clinton C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff filed the original complaint on September 10, 2021. (Dkt. No. 1). On October 25, 2021, the court issued a Decision and Order granting plaintiff's application to proceed in the action in forma pauperis ("IFP"), and conditionally dismissing the original complaint because it failed to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. (Dkt. No. 4). The court granted plaintiff leave to amend his complaint to "correct[ ] the pleading defects" identified with his original complaint. (Id. at 10). Plaintiff availed himself of the opportunity to amend, and the court received plaintiff's amended pleading on or about November 18, 2021. (Dkt. No. 6, "Am. Compl.").

On February 9, 2022, I determined, pursuant to my initial review of the complaint, that plaintiff's amended complaint was accepted for filing and that the only active defendant was C.O. Moore. (Dkt. No. 7 at 3). C.O. Moore filed an answer to the amended complaint on April 14, 2022. (Dkt. No. 12). On December 15, 2022, defendant filed this instant motion for summary judgment (Dkt. No. 16), to which plaintiff responded on February 16, 2023 (Dkt. No. 20).

### B. Summary of Complaint
The complaint alleges that on September 6, 2018, while plaintiff was confined in Clinton C.F., he was attacked by another inmate when they were released from their keep-lock cells at the same time. (Am. Comp. at 4). Although facility policies and procedures prohibited C.O. Moore from releasing the other inmate "until [plaintiff] was ... back in general population," C.O. Moore nevertheless released both inmates simultaneously, knowing that plaintiff did not have an escort at the time. Id. C.O. Moore also "knew there was a race war going on in [Clinton C.F.] with the bloods and the Spanish gangs and let [plaintiff] out of [his] cell with a known gang member posed [sic] a substantial risk of serious harm to [him]." Id. Although C.O. Moore observed the inmate run into plaintiff's cell and attack him, C.O. Moore "did nothing to prevent it from happening." Plaintiff was returned to keep-lock after the incident and remained there for an additional 70 days, until November 15, 2018. (Dkt. No. 16-3, Pl.'s Dep. at 18, 27, 79, 88, 95; Internal Movement History, Dkt. No. 20-1 at 31).

## II. Summary Judgment
**\*2** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006). Rule 56(b) provides that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Thus, a party may move for summary judgment in lieu of an answer. See, e.g., Anderson v. Rochester-Genesee Reg'l

Case 9:22-cv-01178-DNH-MJK   Document 140   Filed 02/17/26   Page 26 of 75
Jackson v. Moore, Not Reported in Fed. Supp. (2023)
2023 WL 4710869

*Transp. Auth.*, 337 F.3d 201, 202 (2d Cir. 2003); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010); *Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, at *1-2 (N.D.N.Y. Mar. 31, 2014).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272. "Only disputes over ['material'] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Where a party has failed to respond to the movant's statement of material facts as required by Local Rule 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the non-movant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Although plaintiff received proper notice of his obligation to respond to defendant's summary judgment motion in accordance with Local Rules, the plaintiff did not file a Statement of Material Facts that addressed many of the factual allegations in defendant's Statement, as required by Local Rule 7.1(a)(3). [1] Consequently, the court may accept the properly supported facts contained in the defendants' Rule 7.1 statement (Dkt. No. 16-2) as true for purposes of this

motion. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295-96 (N.D.N.Y. 2003).

[1]    Defense counsel specifically advised plaintiff of the consequences of failing to respond to the summary judgment motion. (Dkt. No. 16). Counsel forwarded, to plaintiff, a copy of the court's form Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, which provided in pertinent part:

> If you do not file a proper response to this motion, the Court may grant the motion and dismiss some or all of your claims. Under Local Rules 7.1(b) and 56.1(b), to file a proper response to this motion, you must submit the following papers:
>
> > (1) A response to the defendants' statement of material facts that admits and/or denies each of the defendants' assertions in matching numbered paragraphs, 1 and that supports each denial with citations to record evidence.
>
> * * *
>
> WARNING: If you do not submit a proper response to the defendants' statement of material facts, the Court may deem you to have admitted the defendants' factual statements.

(Dkt. No. 16 at 4).

## III. **Exhaustion of Administrative Remedies**

### A. **Legal Standards**

**\*3** The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds, Ross v. Blake*, 578 U.S. 632 (2016). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the court

held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Incarcerated [2] Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Incarcerated [3] Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) and (I), 701.5.

[2]    This committee was formerly known as the "Inmate Grievance Resolution Committee," but has recently been renamed.

[3]    The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.

Prior to *Ross v. Blake*, *supra*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of

"special circumstances." *Ross v. Blake,* 578 U.S. 632, 640 (2016). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross,* 578 U.S. at 639). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross,* 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must also consider whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 2016 WL 4572321 at *2.

### B. Analysis

**\*4** Defendant C.O. Moore argues that plaintiff's failure-to-protect claim is subject to dismissal, for failure to exhaust administrative remedies, because plaintiff did not file an initial grievance prior to bringing suit, nor did he appeal the denial of any grievance concerning this claim to CORC. (Dkt. No. 16-1, Defendant's Memorandum of Law at 14). In support of his position, defendant has attached to his motion papers the sworn declarations of Rachael Seguin ("Seguin Decl.") (Dkt. No. 16-7), the Director of the IGP for DOCCS, and Christine Gregory, the IGP Supervisor at Clinton C.F. ("Gregory Decl.") (Dkt. No. 16-6). These declarations, and the evidence attached as exhibits thereto, indicate that plaintiff neither filed an initial grievance related to his claim that C.O. Moore failed to protect him from another inmate on September 6, 2018, nor did plaintiff submit an appeal to CORC. (*See* Gregory Decl. ¶¶ 16-20; Seguin Decl. ¶¶ 12-14, Ex. A).

In opposition to defendant's motion, plaintiff alleges that, while confined in his keep-lock cell, he attempted to file a grievance relating to the incident with C.O. Moore by putting a sealed letter on the gate for mail pickup. (Dkt. No. 20 at 2-3; Pl.'s Dep. at 87-89). Plaintiff testified that he remembered the grievance being picked up by an unnamed officer, but does not remember the exact day he mailed the grievance. [4] (Dkt. No. 16-3, Pl.'s Dep. at 87-89, 93). Plaintiff speculates that an unnamed officer on duty threw his grievance away. (Dkt. No. 20 at 2-3; Pl.'s Dep. at 87-89)

Case 9:22-cv-01178-DNH-MJK    Document 140    Filed 02/17/26    Page 28 of 75

Jackson v. Moore, Not Reported in Fed. Supp. (2023)
2023 WL 4710869

4    Plaintiff testified that he filed the grievance "it was in like the same – I want to say around like the 22nd or so." (Pl.'s Dep. at 87-88).

Plaintiff acknowledged that he never followed up with respect to his grievance for the 70 days after the incident when he was confined on keeplock; but he alleges that he asked sergeants, officers, and counselors about the status of his grievance and they told plaintiff "they'll get back to you." (Pl.'s Dep. at 93-94). Plaintiff admitted that he did not retain any copies of the purported grievances relative to his complaints against C.O. Moore. (*Id.* at 88). [5]

5    Plaintiff alleges that he was told "it was a code 49 and that it had to go to the superintendent office." (Dkt. No. 20 at 3).

Plaintiff further testified that he not only understood the grievance process, but also that he participated in an orientation program at Clinton C.F. about how the grievance process works at the facility. (*Id.* at 85-86). He admitted that he filed "a couple" of grievances after the incident concerning other matters, while still residing at Clinton C.F. (*Id.* at 90).

The record before this court clearly established that the defendant did not exhaust administrative remedies with respect to the failure-to-protect claim against C.O. Moore. Given that an initial grievance was never filed, nor was the claim ever appealed to CORC, the question becomes whether plaintiff's failure to exhaust should be excused.

The defendant has satisfied his initial burden of "establishing ... that a grievance process exist[ed] and applie[d] to the underlying dispute." *Hubbs v. Suffolk County Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted). [6] Thus, plaintiff assumes the burden of producing evidence that one of the exceptions to the administrative exhaustion requirement applies, excusing his failure to exhaust and permitting his claim to survive summary judgment. *Id.* ("If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors ... rendered a nominally available procedure unavailable as a matter of fact.") [7]

6    IGP Supervisors Gregory and Seguin stated Clinton C.F. had a fully functioning IGP program at all times relevant to the complaint. (Gregory Decl.

¶ 16; Seguin Decl. ¶ 11). Plaintiff also testified that he filed a grievance for an unrelated matter after the incident and received an unfavorable decision and appealed that decision. (Pl.'s Dep. 90-91).

7    I agree with Magistrate Judge Peebles' cogent analysis that, while the burden of production may shift to a plaintiff with respect to certain aspects of the exhaustion issue, "the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant." *See, e.g.*, *Bailey v. Fortier*, No. 9:09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *5-6 (N.D.N.Y. Oct. 4, 2012), *report and recommendation adopted*, 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013); *Nelson v. Plumley*, No. 9:12-CV-422 (TJM/DEP), 2015 WL 4326762, at *7-8 (N.D.N.Y. July 14, 2015), *report and recommendation adopted*, 2013 WL 1305338 (N.D.N.Y. Mar. 18, 2013).

**\*5** Liberally construed, plaintiff appears to argue that administrative remedies were unavailable to him as a result of C.O. Moore trying "to cover his mistakes up". (Dkt. No. 20 at 2-3). Plaintiff does not offer any support for his claim other than his statement "officers talk like inmates talk. So knowing the incident, knowing I put in a grievance, they wanted to be nosey [sic], and they opened it and never let it get to where it was supposed to go once it was read." (Pl.'s Dep. at 89). During his deposition, plaintiff specifically stated that C.O. Moore was not the person who picked up the grievance. (Pl.'s Dep. at 88-89). Furthermore, plaintiff testified the alleged grievance was sealed, so the unnamed C.O. would have no way of knowing what conduct the grievance was referring to unless (s)he opened the envelope. (Pl.'s Dep. at 92).

As noted above, plaintiff was on keep-lock status when he allegedly attempted to submit a grievance relating to the claim in this action by leaving a sealed envelope for C.O.s to deliver. "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6. While "[k]eep-lock is similar to serving time in a Special Housing Unit ... [with the inmate] remain[ing] in their assigned cell" (Dkt. No. 16-5, Terry Allen Declaration ¶ 7), plaintiff acknowledged that keep-lock status is "not like if you were in the SHU" (Pl.'s Dep. at 35).

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative

Case 9:22-cv-01178-DNH-MJK    Document 140    Filed 02/17/26    Page 29 of 75

Jackson v. Moore, Not Reported in Fed. Supp. (2023)
2023 WL 4710869

remedies had been "actually available" to an inmate plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust. The plaintiff alleged that, while housed in a SHU, he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance, and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id.*

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a DOCCS regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)). The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed ... [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126. [8] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

[8]   My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

Some district court cases in the Second Circuit suggest that *Williams* should be limited to its particular facts, *e.g.*, by not applying its holding to plaintiffs who are not confined in a SHU. [9] *See, e.g.*, *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *6 (S.D.N.Y. Dec. 21, 2016) ("the factual scenario here is different from that in *Williams* where the Second Circuit found that part of the IGP's regulatory scheme was 'so opaque and so confusing that ... no reasonable prisoner c[ould] use' it.") (citing *Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *5 (S.D.N.Y.

July 19, 2016) (finding that the Second Circuit's decision in *Williams* "hinged on the 'extraordinary circumstances' specific to the case before it")); *Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH), 2019 WL 7484052, at *6 (N.D.N.Y. Oct. 4, 2019) ("Courts have taken an inmate's housing and level of segregation from the general population into account when determining the availability of grievance procedures.") (citing *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) (holding that a plaintiff in keeplock was not entitled to an exhaustion exception when he alleged that his grievance had not been filed due to mail tampering, and subsequently never inquired about it), *report and recommendation adopted*, 2017 WL 2790530 (N.D.N.Y. June 27, 2017)).

[9]   In *Medina v. Napoli*, 725 F. App'x at 53-54, the Second Circuit followed *Williams* in a case involving a SHU inmate, but absent the additional circumstance of a transfer to a different facility, which might have further complicated the inmate's ability to file a grievance.

**\*6** In any event, unsupported assertions that a plaintiff "filed a grievance but that it was somehow lost or destroyed" have generally been found "insufficient to establish a genuine issue of fact." *Blake v. Porlier*, 2019 WL 7484052, at *5 ("Courts within the Second Circuit have continuously held that 'mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations.' ") (quoting *Rodriguez v. Cross*, 2017 WL 2791063, at *5); *Artis v. Dishaw*, No. 9:14-CV-1116 (MAD/ATB), 2016 WL 11266599, at *7 n.13 (N.D.N.Y. Sept. 12, 2016) (finding the plaintiff's failure to exhaust was not excusable, in part, because while the plaintiff "state[d] that some grievances were destroyed ... he ha[d] not submitted any copies of these grievances, nor d[id] he specify when he attempted to file them"), *report and recommendation adopted*, 2017 WL 1076343 (N.D.N.Y. Mar. 22, 2017); *Engles v. Jones*, No. 6:13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact.") (citing *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018)).

Moreover, courts in this Circuit have granted summary judgment for failure to exhaust administrative remedies, even for a prisoner confined to a SHU whose ability to directly file a grievance or make a copy may be limited, when the plaintiff

Case 9:22-cv-01178-DNH-MJK Document 140 Filed 02/17/26 Page 30 of 75

Jackson v. Moore, Not Reported in Fed. Supp. (2023)
2023 WL 4710869

provided no documentation or minimal corroborative details. *See, e.g.*, *Sankara v. Montgomery*, No. 9:16-CV-00885 (FJS/ TWD), 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018) ("Plaintiff's conclusory allegations that the DOCCS IGP was unavailable to him [while confined to the SHU] were insufficient to withstand summary judgment," where the plaintiff "provided no evidence that he actually did write grievances; when they were written; the content of the grievances ... the officers named in the grievance(s) ...; the specific steps taken by Plaintiff to provide them to an officer to send to the grievance office; and any specific follow up with the grievance office[.]"), *report and recommendation adopted*, 2018 WL 3408135 (N.D.N.Y. July 13, 2018); *Simpson v. Price*, No. 9:19-CV-1413 (MAD/ATB), 2021 WL 7367083, at *9 (N.D.N.Y. Dec. 29, 2021) (in the absence of any documentary evidence to corroborate plaintiff's alleged attempt to file a grievance from the SHU, the court concludes that plaintiff's completely unsupported, unclear, and vague implication that the grievance was not properly processed does not suffice to avoid summary judgment), *report and recommendation adopted*, 2022 WL 336540 (N.D.N.Y. Feb. 4, 2022); *Ozzborn v. Cornell*, No. 9:17-CV-1039 (MAD/ ATB), 2021 WL 2227829, at *5 (N.D.N.Y. June 2, 2021) (Plaintiff claimed that he filed a grievance from the SHU by leaving a plain envelope addressed to the grievance committee for the mail personnel to collect; but, because he never received a response, he presumed that the grievance was never submitted. Because plaintiff never followed up on his grievance and successfully filed numerous other grievances in the recent past, he has failed to demonstrate that his administrative remedies were unavailable to him).[10]

[10]    District Judge D'Agostino distinguished *Williams v. Priatno* by noting the various ways in which the plaintiff in *Williams* specified how he followed up with respect to the grievance that he left for delivery from the SHU, which was never filed with the IGP. *Id.* at *4.

Here, the court does not merely rely on plaintiff's lack of direct evidence, such as copies of the relevant grievances, in finding that he has failed to establish a genuine issue of material fact as to unavailability. Plaintiff in this case has done nothing more than allege in conclusory fashion that he attempted to file a grievance concerning the September 6, 2018 incident. Plaintiff's testimony about when he attempted to submit the grievance was vague and he did not identify the officer who allegedly collected it. Likewise, he has not supported his claim that unnamed sergeants, officers, and counselors told

him "not to worry" with any documentary evidence. *See, e.g.*, *Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013) ("Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the IGP [process]"), *report and recommendation adopted*, 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013).

**\*7** For the above reasons, the court concludes that plaintiff's completely unsupported and vague claim that a grievance he attempted to file against C.O. Moore relative to the September 6, 2018 incident was not properly processed does not suffice to avoid summary judgment. Accordingly, the court recommends that C.O. Moore be granted summary judgment and the second amended complaint be dismissed against him, on the ground that plaintiff failed to exhaust his administrative remedies.

Dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004). Here, plaintiff's time to file the relevant grievance to CORC in accordance with the rules and regulations has already passed,[11] rendering his failure to exhaust his administrative remedies incurable at this time. As a result, I recommend that plaintiff's complaint be dismissed with prejudice as to these claims. *See Livingston v. Hoffnagle*, No. 17-CV-1158 (MAD/DEP), 2019 WL 409366, at *7 (N.D.N.Y. Feb. 1, 2019) (dismissing without leave to amend, where the exhaustion error would not be cured by permitting the plaintiff leave to amend).

[11]    "Ordinarily, an inmate must first submit 'a complaint,' or grievance, to the facility's IGP clerk within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a). Relief from the twenty-one day time limit may be granted by the IGP supervisor based upon mitigating circumstances, provided, however, that '[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence.' " *Nelson v. Plumley*, 2015 WL 4326762, at *2 (citing N.Y.C.R.R. § 701.6(g)(1)(i) (a)).

**IV. Eighth Amendment Failure to Protect Claim**

Defendant also seeks summary judgment on the merits of plaintiff's failure to protect claim, arguing, among other things, that plaintiff has failed to establish C.O. Moore was acting with deliberate indifference to conditions that posed a substantial risk of serious harm to plaintiff. For the following reasons, the court agrees that summary judgment is warranted, in the alternative, on the merits of plaintiff's Eighth Amendment claim.

### A. Legal Standards

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970 (1994). The plaintiff must show that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. *Id.* at 837, 114 S. Ct. 1970. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendant must also draw that inference. *Id.*

The failure of corrections officers to employ reasonable measures to protect an inmate from violence by other inmates may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citing *United States v. Bailey*, 444 U.S. 394, 423 (1980)). "Reckless disregard" of plaintiff's right to be free from attacks by other inmates may be shown by the existence of a "pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221-22 (S.D.N.Y. 1995) (citing *Rucco v. Howard*, No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993); *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)).

**\*8** An isolated omission by corrections officers generally does not support a claim for deliberate indifference absent circumstances involving evil intent, recklessness, or deliberate indifference. *Coronado v. Goord*, No. 99 Civ. 1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (citing *Ayers v. Coughlin*, 780 F.2d at 209). Plaintiff may allege a constitutional claim by alleging that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and that the officials being sued were exposed to information concerning the risk and thus, must have known about it. *Id.* (citing *Farmer*, 511 U.S. at 842-43).

### B. Analysis

With due regard for plaintiff's status as a pro se litigant, plaintiff has failed to establish that C.O. Moore knew of a particular risk to plaintiff's safety or that C.O. Moore was deliberately indifferent for failing to protect plaintiff. Plaintiff merely offers conclusory, general allegations that C.O. Moore knew about an alleged gang and/or race war happening at Clinton C.F. (Dkt. No. 20 at 2). However, C.O. Moore has, in his sworn declaration, denied having any knowledge about a race war at Clinton C.F. or having any access to information regarding an inmate's gang status. (Moore Decl. ¶¶ 21, 23). Even if C.O. Moore did have access to such records, plaintiff testified that he is not a member of a gang. (Jackson Dep. at 19). Thus, there is nothing in the record other than plaintiff's conclusory allegations establishing that C.O. Moore knew plaintiff was at a substantial risk of harm because of an alleged gang war.

Plaintiff's claim is further undermined by his sworn testimony admitting that he had not had any prior interactions with the inmate who attacked him before the underlying incident. (Jackson Dep. at 19-20); *Gillard v. Jarvis*, No. 9:11-CV-1021 (LEK/ATB), 2012 WL 7037734, at *7 (N.D.N.Y. Nov. 6, 2012), *report and recommendation adopted*, 2013 WL 474384 (N.D.N.Y. Feb. 7, 2013) ("If plaintiff did not know the inmate who assaulted him, he cannot claim that defendants "knew" and disregarded the serious risk that plaintiff would be assaulted at Clinton by this unknown individual."). Plaintiff has not alleged that he was threatened by the other inmate, or any member of the other inmate's race or gang, prior to this incident. Additionally, neither inmate was in protective custody when they were released form their cells. (Moore Decl. ¶ 14). Plaintiff also testified he never asked for protective custody before or after the incident. (Jackson Dep. at 73).

"Courts routinely deny deliberate indifference claims based upon surprise attacks." *Zimmerman v. Macomber*, No. 95 Civ. 0882, 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001) (granting summary judgment in favor of the defendants where the plaintiff failed to carry his burden to establish that the defendant had knowledge of a substantial risk to plaintiff's health or safety from an inmate attacker). Here, plaintiff has failed to allege defendants knew of a prior altercation between the plaintiff and his attacker, or of any threats that had been made against the plaintiff. *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010); *Clark v. Gardner*, 256 F. Supp.3d

Case 9:22-cv-01178-DNH-MJK    Document 140    Filed 02/17/26    Page 32 of 75

Jackson v. Moore, Not Reported in Fed. Supp. (2023)

2023 WL 4710869

154, 168 (N.D.N.Y. 2017). Because plaintiff has alleged no facts suggesting that C.O. Moore knew of a particular risk to the plaintiff's safety, he has failed to raise a material question of fact as to whether C.O. Moore was deliberately indifferent, and summary judgment is warranted. *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp.2d 354, 363 (S.D.N.Y. 2013).

**\*9**  **WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that Defendant's motion for summary judgment (Dkt. No. 16) be **GRANTED,** and the complaint be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4710869

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:21-CV-01001**<br>Jackson v. New York State Department of Corrections et al | — | N.D.N.Y. | Sep. 10, 2021 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1.  Jackson v. Moore
    2023 WL 4710869 , N.D.N.Y. , Apr. 14, 2023

*Report and Recommendation Adopted by*

2.  Jackson v. Moore
    2023 WL 4711091 , N.D.N.Y. , July 24, 2023

**Related References (1)**
3.  Jackson v. Moore
    2022 WL 22888891 , N.D.N.Y. , Feb. 09, 2022

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Jackson v. Moore, Not Reported in Fed. Supp. (2023)

2023 WL 4711091

2023 WL 4711091
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dumar JACKSON, Plaintiff,

v.

Officer MOORE, Corr. Fac. Ofcr.,
Clinton Corr. Fac., Defendant.

9:21-CV-1001 (GTS/ATB)
|
Signed July 24, 2023

**Attorneys and Law Firms**

DUMAR JACKSON, 18-A-2746, Plaintiff, Pro Se, Five Points Correctional Facility, Caller Box 19, Romulus, New York 14541.

HON. LETITIA A. JAMES, Attorney General for the State of New York, RACHEL OUIMET, ESQ., Assistant U.S. Attorney, Counsel for Defendant, The Capitol, Albany, New York 12224.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* prisoner civil rights action filed by Dumar Jackson ("Plaintiff") against Correctional Officer Moore ("Defendant"), are (1) Defendant's motion for summary judgment, (2) United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Defendant's motion be granted and Plaintiff's Complaint be dismissed, and (3) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 16, 21, 22.) Because Plaintiff's one-page (four-sentence) Objection fails to specifically challenge any portion of the Report-Recommendation, the Court need review that Report-Recommendation for only clear error.[1] After carefully reviewing the relevant filings in this action, the Court can find

no clear error in the Report-Recommendation: Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein, and Plaintiff's Complaint is dismissed with prejudice.

[1]  When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 21) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 16) is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with prejudice.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4711091

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:21-CV-01001**<br>Jackson v. New York State Department of Corrections et al | — | N.D.N.Y. | Sep. 10, 2021 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (2)**

1. Jackson v. Moore
2023 WL 4710869 , N.D.N.Y. , Apr. 14, 2023

*Report and Recommendation Adopted by*

2. Jackson v. Moore
2023 WL 4711091 , N.D.N.Y. , July 24, 2023

**Related References (1)**

3. Jackson v. Moore
2022 WL 22888891 , N.D.N.Y. , Feb. 09, 2022

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4146276

KeyCite Yellow Flag

Distinguished by Sheffer v. Fleury,   N.D.N.Y.,   September 18, 2019

2014 WL 4146276
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Chris PRICE, Plaintiff,

v.

J. OROPALLO, Sergeant, Upstate Corr. Facility;
Norman H. Bezio, Dir. of Shu, Inmate Disciplinary
Program, Nys Docs; and Phillip Battiste, Dir.
of Security Staff, Nys Docs, Defendants.

No. 9:13–CV–0563 (GTS/TWD).
|
Signed Aug. 19, 2014.

**Attorneys and Law Firms**

Chris Price, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, Keith J. Starlin, Esq., Assistant Attorney General,
of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se* prisoner civil
rights action filed by Chris Price ("Plaintiff") against the three
above-captioned New York State correctional employees
("Defendants"), are Defendants' motion for summary
judgment, and United States Magistrate Judge Therese
Wiley Dancks' Report–Recommendation recommending that
Defendants' motion be granted. (Dkt.Nos.25, 28.) Plaintiff has
not filed an Objection to the ReportRecommendation, and
the deadline by which to do so has expired. (*See generally*
Docket Sheet.) After carefully reviewing the relevant filings
in this action, the Court can find no clear error in the Report–
Recommendation: Magistrate Judge Dancks employed the
proper standards, accurately recited the facts, and reasonably
applied the law to those facts. (Dkt. No. 28.) To that analysis,
the Court would add only two points.

First, with regard to Plaintiff's claims against Defendants
Battiste and Bezio, the Court notes that the verified Complaint
does not allege facts plausibly suggesting, or adduce
admissible evidence establishing, that Plaintiff sent letters to
Battiste or Bezio at an appropriate address *and* by appropriate
means. (Dkt. No. 1, at ¶ 6.) In any event, even if he had
done so, the Complaint alleges facts plausibly suggesting, or
adduces admissible evidence establishing, that a response by
officials at his correctional facility followed the sending of
the letters. (*Id.*)

Second, as an alternative ground for the dismissal of the
Complaint, the Court accepts Defendants' failure-to-exhaust
argument because, even assuming Plaintiff was in fact told
that his complaint was not grievable, he filed the grievance
and knew he was "suppose[d] to ... receive[ ]" a response to it.
(Dkt. No. 1, at 4.) More important, he could have, and should
have, filed an appeal from his non-response (which he did not
do). 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within
the time limits may be appealed to the next step."); *see also
Smith v. Kelly,* 985 F.Supp.2d 275, 281–82 (N.D.N.Y.2013)
(collecting cases). Such an appeal could have proved fruitful,
given that the issue was indeed grievable. (Dkt. No. 25,
Attach. 5. at ¶ 3 [Hale Decl.].)

For all of these reasons, Defendants' motion is granted, and
Plaintiff's Complaint is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 28) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment
(Dkt. No. 25) is **GRANTED;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
**DISMISSED** in its entirety.

### ORDER and REPORT–RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

*Pro se* Plaintiff Chris Price, an inmate currently confined
in the Auburn Correctional Facility, has commenced this
action pursuant to 42 U.S.C. § 1983 alleging Defendants

failed to protect him in violation of his Eighth Amendment rights by placing a member of a rival gang in his cell. (Dkt. No. 1.) Plaintiff has sued Corrections Sergeant Jon Oropallo ("Oropallo"); Phillip Battiste ("Battiste"), New York State Department of Corrections and Community Supervision ("DOCCS") Director of Security Staff; and Norman R. Bezio ("Bezio"), DOCCS Director of Special Housing/ Inmate Disciplinary Program *Id.* at 1.

**\*2** Defendants filed an Answer to Plaintiff's Complaint (Dkt. No. 12) and have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 25.) Plaintiff has not opposed the motion or sought additional time within which to do so. For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

While Plaintiff was confined at the Upstate Correctional Facility ("Upstate"), his membership in the Crips gang was known to prison officials. (Dkt. No. 1 at ¶ 7.) Plaintiff expressed concerns for his safety to officials at Upstate, at least in part because according to Plaintiff, Defendant Oropallo had previously forced him to fight with members of the Bloods, a rival gang. *Id.* at 6. In a Declaration submitted in support of Defendants' motion for summary judgment, Oropallo denies ever having forced Plaintiff to fight with another inmate. (Dkt. No. 25–4 at ¶ 4.)

The evidence shows that Oropallo did issue a misbehavior report on Plaintiff on December 8, 2011, after observing Plaintiff and his cell mate Williams fighting. (Dkt. No. 25–4 at ¶ 8 and p. 23.) [1] The fight investigation form reveals that Plaintiff did not want protection and neither he nor Williams wanted to press charges in connection with the fight. *Id.* at p. 24. Donald Uhler ("Uhler"), Deputy Superintendent of Security at Upstate, reviewed Plaintiff's security file and found no request by him for protective custody. (Dkt. No. 25–3 at ¶ 10.)

[1]     Page numbers cited herein are those assigned by the Case Management/Electronic Case File (CM/ECF) system.

Plaintiff claims that as a result of being forced to fight members of the Bloods gang, he filed a grievance and began speaking with officials at Upstate regarding his safety in the fall of 2011. (Dkt. No. 1 at ¶ 6.) Plaintiff's file from Upstate contains a December 12, 2011, "To Whom it May Concern"

letter in which Plaintiff disclosed that he had been forced to fight on December 8, 2011, and had been threatened with a scalpel by members of the Bloods. (Dkt. No. 25–3 at ¶ 4 and p. 6.) In his December 12, 2011, letter Plaintiff indicated that he was writing to create a paper trail regarding safety issues he had raised with corrections officers and sergeants. (Dkt. No. 25–3 at p. 6.) Plaintiff wrote:

> I used to be a well known crip gang member. The bloods still label me as being a crip gang member. So to back myself up, I'm [writing] to all people that I think should be notified of my situation of safety. On the 8th of this month for this particular reasons I stated above, I was [threatened] and forced to fight. I fear for my life while I'm here [incarcerated]. I just wanna do the time that I have and hopeful[ly] get a reversal on my appeals. Are there any ways that, I can be bunked up with someone who isn't labeled a bloods gang member, because I was threatened with a scalpel. I notified the proper personnel and I wasn't taken serious [ly] until I started kicking the cell door I was in, I was taken out to be forced to fight in another cell. I fear I'm a get hurt or I'm a hurt someone. Can you help me? Thank you for your time and [patience].

**\*3** *Id.*

According to Uhler, Lt. Lumbard ("Lumbard") investigated the letter on December 21, 2011. *Id.* at ¶ 5. Lumbard reported that Plaintiff told him that he was a member of the Crips gang and had been having trouble with members of the Bloods gang. *Id.* at p. 5. When asked about being threatened with a scalpel, Plaintiff refused to provide any information. *Id.* Plaintiff did tell Lumbard that he was getting along well with his current cell mate, and that they had no issues. *Id.* Lumbard indicated that the cell block staff had been notified about the situation and advised to leave Plaintiff with his cell mate and, if possible, to move the cell mate with him when he was moved upstairs. *Id.*

2014 WL 4146276

Plaintiff was dissatisfied with the resolution of his grievance and claims to have written to Defendants Battiste and Bezio about his safety concerns. *Id.* Plaintiff was subsequently told by Upstate officials that the safety issues of which he had complained would be handled, and he would not have to worry about being placed in the same cell with known members of the Bloods. *Id.* Nonetheless, on August 9, 2012, inmate Adams, a member of the Bloods, was brought in to bunk with Plaintiff. (Dkt. No. 1 at ¶ 6 .) Plaintiff and Adams got into what both described as a gang related fight in the cell within minutes after the officer placing Adams in the cell left, and Plaintiff sustained a non-displaced fracture of his nose and a laceration on his nose which required stitches. *Id .;* Dkt. Nos. 25–3 at 12; 25–4 at 8–9; 26 at 8–12.

Prior to Adams being placed in the cell with Plaintiff, Oropallo had no personal knowledge or information that would have led him to believe that Adams was gang related or would pose a threat to Plaintiff. (Dkt. No. 25–4 at ¶ 7.) Adams had never told Oropallo he was in a gang, and nothing about the December 8, 2011, fight between Plaintiff and Williams led Oropallo to believe Adams would be a threat to Plaintiff. *Id.* at ¶ 10. Furthermore, the assignment of inmates for double cell housing was not within the scope of Oropallo's authority. *Id.* at ¶ 9.

DOCCS maintains an "enemies" list for inmates based upon information provided by the inmate and from his disciplinary record. *Id.* at ¶ 6. Uhler has explained in his Declaration that DOCCS does not recognize street gangs, and inmates frequently do not disclose gang affiliations to prison officials, although if there is information of gang affiliation, a notation might appear on the inmate's personal characteristics screen, his security file, or be made by a counselor during intake. *Id.* at ¶ 7. Uhler reviewed the DOCCS files on Adams and found no notations indicating that he was gang affiliated. *Id.* at ¶ 8; *see also* Adams' Personal Characteristics Form and Inmate Security Classification Form, neither of which identifies him as a member of the Bloods gang. *Id.* at pp. 9–10.

A misbehavior report was filed against Plaintiff as a result of the August 9, 2012, fight. (Dkt. No. 25–4 at 8.) Plaintiff was found guilty of violent conduct and assault and was given four months in the Special Housing Unit, loss of packages, commissary, ear phones, recreation, and good time, with two months suspended as an incentive for Plaintiff to improve his behavior. *Id.* at 5–6.

## II. APPLICABLE LEGAL STANDARDS

### A. General Legal Standards for Summary Judgment Motions

**\*4** Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin,* 467 F.3d at 272–73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann,* 604 F.3d 72, 81 (2d Cir.2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] ... may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit. [2] *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist ....") (citations omitted).

| 2 | Plaintiff's Complaint (Dkt. No. 1) was properly verified under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65–66 (2d Cir.1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746). |
|---|---|

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008). Where a party is proceeding *pro se,* the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz,* No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876 at *3, 1999 U .S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)). [3]

[3]      Copies of unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders,* 557 F.3d 76, 79 (2009) (*per curiam* ). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

**B. Summary Judgment When a *Pro Se* Plaintiff Fails to Oppose the Motion**

Plaintiff has not opposed Defendants' summary judgment motion. N .D.N.Y. L.R. 56.2 requires the moving party to notify a *pro se* litigant of the consequences of failing to respond to the summary judgment motion. [4] Where a party has been given satisfactory notice of the consequences of failing to respond to a motion for summary judgment, the nonmovant's failure to respond to the movant's statement of material facts will result in the facts set forth in the statement being accepted as true to the extent they are supported by the evidence in the record. [5] *See* L.R. 7.1(a) (3) (*"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* ) (emphasis in original).

[4]      A Notice of the Consequences of Failing to Respond to a Summary Judgment Motion was served with Defendants' motion papers in this case. (Dkt. No. 25 at 3.)

[5]      *See Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to

evidence in the record supports the assertion.") (citation omitted).

**\*5** A *pro se* plaintiff's failure to oppose a summary judgment motion does not mean that the defendant's motion is to be granted automatically. An unopposed summary judgment motion may properly be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) (internal quotes and citations omitted).

A district court has no duty to perform an independent review of the record to find proof of a factual dispute where the nonmovant fails to respond to a summary judgment motion. *See Amnesty America. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2000). This is so even where a plaintiff is appearing *pro se* because even *pro se* plaintiffs must obey the Court's procedural rules. *See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Although not obligated to do so, the Court has elected to conduct a review of the entire record in this case. *See Monahan v. New York City Dept. of Corrections,* 214 F.3d 275, 292 (2d Cir.2000) (a court may, in its discretion, "choose to conduct an assiduous review of the record" even when a party has failed to file a statement of material facts). Because Plaintiff's Complaint is verified, the Court will treat it as an affidavit in opposition to Defendants' motion. *See Colon,* 58 F.3d at 872.

## III. ANALYSIS

**A. Administrative Exhaustion**

Defendants argue that they are entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies with regard to Defendants' alleged failure to protect him from a Bloods gang member in violation of his Eighth Amendment rights. (Dkt. No. 25–6 at 5–6.)

1. *Exhaustion Under The Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997(e). The PLRA requires "proper exhaustion" of prison administrative remedies, which includes compliance with agency deadlines and procedural rules. *See Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378,

165 L.Ed.2d 368 (2006). "[P]roper exhaustion ... means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Id.* Exhaustion is mandatory, and an inmate cannot satisfy the PLRA's exhaustion requirement by filing an untimely or administratively defective grievance or appeal. *Id.* at 84–85.

The DOCCS Inmate Grievance Procedure ("IGP") has three stages which prison inmates must complete. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5; *see also Hernandez v. Coffey,* 582 F.3d 303, 305 (2d Cir.2009). First a grievance complaint must be submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id.* at § 701.5(c). If dissatisfied with the superintendent's decision, the inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* at § 701 .5(d).

**\*6** An inmate must follow through on all three steps to complete the exhaustion process. *See Morrison v. Stefaniak,* 523 F. App'x 51 (2d Cir.2013) (summary order) (upholding dismissal of complaint because plaintiff failed to appeal IGRC's decision); *Belile v. Griffin,* No. 9:11–CV0092 (TJM/ DEP), 2013 WL 1776086, at \*3–4, 7, 2013 U.S. Dist. LEXIS 47137, at \*10, 22–23 (N.D.N.Y. Feb.12, 2013) (plaintiff failed to exhaust his administrative remedies because he had not followed through on all of the steps, *i.e.,* he did not appeal to the superintendent of the facility or appeal any unfavorable decision of the superintendent to CORC).

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing that a plaintiff has failed to exhaust his available administrative remedies. *See Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at \*4, 2010 U.S. Dist. LEXIS 32014, at \* 16 (N.D.N.Y. Mar.31, 2010). If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004) ]." *Murray,* 2010 WL 1235591, at \*4. *Hemphill* sets forth a three-part

inquiry for district courts. [6] First, courts must determine if administrative remedies were in fact available to plaintiff. In *Hemphill,* the Second Circuit stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill,* 380 F.3d at 688.

[6] Subsequent to *Hemphill,* the Supreme Court decided *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84. The Supreme Court resolved the question in the negative, explaining that PLRA requires "proper exhaustion"—"using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id.* at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford,* the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g., Amador v. Andrews,* 655 F.3d 89, 102–03 (2d Cir.2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense) (internal quotation marks omitted).

Second, courts must determine if the defendants are estopped from presenting nonexhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by conduct such as " 'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.' " *Hemphill,* 380 F.3d at 688 (citing *Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004)). Generally, defendants cannot be estopped from asserting a non-exhaustion affirmative defense based upon the actions or inaction of other individuals. *Murray,* 2010 WL 1235591, at \*5 & n. 26 (collecting cases); *McCloud v. Tureglio,* No. 07–CV–0650, 2008 WL 1772305, at \* 12, 2008 U.S. Dist. LEXIS 124388, at \*44 (N.D.N.Y. Apr. 15, 2008) (Lowe, M.J.) ("None of those documents allege facts plausibly

2014 WL 4146276

suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question."). Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a nonexhaustion defense, the inmate's failure to exhaust may be justified. *Hemphill, 380 F.3d at 686.*

2. *Exhaustion Analysis*

**\*7** In his Complaint, Plaintiff has alleged that he asked to file a grievance with regard to the placement of a known Bloods gang member in his cell. (Dkt. No. 1 at ¶ 4.) According to Plaintiff, he was told by the grievance officer that the issue was not grievable and, as a result, never received a response to his grievance. *Id.* Jeffrey Hale ("Hale"), Assistant Director for the DOCCS IGP, has stated in his Declaration that the IGP is the appropriate vehicle for inmates to use to address issues regarding the person with whom they are housed and complaints against staff. (Dkt. No. 25–5 at ¶ 3.) Defendants have not, however, submitted evidence disputing Plaintiff's claim that he was told his complaint was not grievable.

Instead, Defendants have focused on a grievance filed by Plaintiff with regard to the medical care he received for the injuries he sustained in the fight with Adams and have relied upon Plaintiff's failure to appeal from the denial of that grievance as evidence of failure to exhaust the claim asserted in this lawsuit. (Dkt. Nos. 25–3 at ¶ 9 and pp. 11–13; 25–6 at 6.) In Grievance No. UST–50552, Plaintiff referenced the fight in his cell but only in the context of the fight as the cause of his broken nose. *Id.* at p. 11. Plaintiff's complaint was that it took five days for the medical staff at Upstate to send him out for x-rays. *Id.* The investigative report on the grievance references only the medical care given Plaintiff, and the grievance was denied solely on the grounds that there was no urgent need for an x-ray. *Id.* at p. 13. In short, the grievance has no direct relevance to Plaintiff's exhaustion of the failure to protect claim asserted in this lawsuit.

The relevant exhaustion issue on this motion is whether the allegation in Plaintiff's Complaint regarding his unsuccessful attempt to grieve the failure to protect issue is sufficient by itself to raise an issue of fact under any of the *Hemphill* considerations. A number of district courts in the Second Circuit have found either that the IGP is unavailable to an inmate who has been told by a prison official that his complaint was not grievable, or that the misinformation constitutes a special circumstance excusing exhaustion under

*Hemphill.* [7] *See, e.g., Partee v. Goord,,* No. 06–15528, 2007 WL 2164529(SAS), at *4, 2007 U.S. Dist. LEXIS, at *14 (S.D.N.Y. July 25, 2007) (excusing exhaustion requirement because plaintiff was told in reply to his grievance that his claim was outside the purview of the IGRC, and he reasonably understood this to mean his dispute was not grievable); *Lewis v. Cunningham,* No. 05–9243(GBD), 2007 WL 2412258, at *2, 2007 U.S. Dist. LEXIS 62346, at *5 (S.D.N.Y. Aug.23, 2007) (finding special circumstances justifying failure to exhaust remedies because a supervisor told plaintiff that filing a grievance was not the proper way to address a complaint, and to instead write a letter to the Chief Medical Officer at the Department of Health, which he did); *Jeffers v. Goord,* No. 9:99–CV–0335 (FJS/GHL), 2005 WL 928628, at *6, 2005 U.S. Dist. LEXIS 39309, at *16–17 (N.D.N.Y. Apr.4, 2005) ("[p]rison official may prevent a prisoner from utilizing a remedy by incorrectly representing to the prisoner that his complaint is not grievable, or that it is grievable only through another avenue.").

7    Courts have noted that there is significant overlap in the three *Hemphill* considerations. *See, e.g., Barksdale v. Frenya,* No. 9:10–CV–00831 (MAD/DEP), 2012 WL 4107805, at *6 n. 11, 2012 U.S. Dist. LEXIS 134738, at *21 n. 11 (N.D.N.Y. Sept.19, 2012) ("In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap."). A failure to exhaust as a result of being given false information on whether a complaint was grievable by a non-defendant could arguably fit within either the first or third consideration.

**\*8** Defendants' failure to submit evidence refuting or explaining Plaintiff's claim that he was told his complaint was not grievable leaves material issues of fact regarding the applicability of one or more of the *Hemphill* considerations. Therefore, the Court recommends that Defendants' request for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies be denied without prejudice.

**B. Battiste and Bezio**
The Eighth Amendment to the United States Constitution "requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996). Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate

Price v. Oropallo, Not Reported in F.Supp.3d (2014)
2014 WL 4146276

indifference to the inmate's safety. *Morales v. New York State Dep't of Corr.,* 842 F.2d 27, 30 (2d Cir.1988) ("[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983."); *see also Hendricks v. Coughlin,* 942 F.2d 109, 113 (2d Cir.1991) ("[A]n inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect [the inmate] from the violent actions of other inmates may state a viable § 1983 cause of action."); *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment"); *Wassmann v. County of Ulster,* 528 F. App'x 105, 106 (2d Cir.2013) ("Officers at correctional facilities have a duty to protect inmates from violence at the hands of other inmates.") (citing *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

To prevail on a failure to protect claim, an inmate must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference. *Farmer,* 511 U.S. at 837. In order to establish deliberate indifference where a prison official has failed to protect an inmate from violence by another inmate, a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety. *Hayes,* 84 F.3d at 620. Even assuming that the allegations in Plaintiff's Complaint are sufficient to satisfy, or at least raise a question of fact on the issue of substantial risk of harm, the summary judgment record is devoid of evidence that Battiste and Bezio exhibited deliberate indifference to Plaintiff's safety in placing Adams in his cell.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919,

at \*6, 2012 U.S. Dist. LEXIS 25367, at \*22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (citing *Ayers,* 780 F.2d at 210). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered ." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*9** The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873. [8]

[8]   The Supreme Court's decision in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) has arguably nullified some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

Plaintiff claims that he wrote to Defendants Battiste and Bezio with respect to his safety concerns with regard to sharing a cell with a Bloods gang member after he was dissatisfied with the response of Upstate officials to his complaints in the fall or winter of 2011. (Dkt. No. 1 at ¶ 6.) According to Plaintiff after he sent the letters to Battiste and Bezio he was told by Upstate officials that his safety issue had been addressed. *Id.*

Battiste and Bezio did not submit evidence regarding whether they received letters from Plaintiff and, if so, took any action in response. Instead, they rely upon an attorney's declaration stating upon information and belief that a search was made of records in the DOCCS Central Office and no correspondence to or from Plaintiff was found. (Dkt. No. 25–2 at ¶ 3.) The

source of counsel's information and belief appears to be the July 25, 2013, unsworn letter from a DOCCS senior attorney annexed as an exhibit. *Id.* at p. 4.

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997); *see also Salahuddin,* 467 F.3d at 272–73 (movant bears the initial burden of showing through the production of admissible evidence that he is entitled to judgment as a matter of law). An attorney's affidavit that is not based upon personal knowledge and relies upon an attached letter not sworn as required by Rule 56(e) is not admissible evidence and not properly considered on a summary judgment motion.[9] *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir.1986); *see also Sepanski v. Jani–King, Inc.,* No. 10–CV–518S, 2013 WL 4455412, at *2–3, *8, 2013 U.S. Dist. LEXIS 116437, at *8 (W.D.N.Y. Aug.16, 2013) (holding that three unsworn letters submitted by plaintiff could not be considered in connection with a motion for summary judgment).

[9]    Statements in Defendants' Statement Pursuant to Rule 7.1(a)(3) are deemed admitted on an unopposed summary judgment motion only to the extent they are supported by admissible evidence. *See Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001) ("court may not rely solely upon statement of undisputed facts in determining whether movant has met this burden of showing the absence of a genuine issue for trial; court must be satisfied that the citation to evidence in the record supports the assertion). Paragraph 13 of Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 25–1), stating that "[t]here is no evidence to demonstrate that Defendants Bezio or Battiste received correspondence from Plaintiff," relies upon an attorney's declaration that is not based upon personal knowledge and an unsworn letter, neither of which constitutes admissible evidence. *See Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir.1986).

A movant's burden of demonstrating the absence of a question of material fact remains the same where the motion is unopposed. *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is

presented.") (citation and internal quotation marks omitted). Defendants have not satisfied their burden of production with respect to Plaintiff's claim that he wrote to Battiste and Bezio regarding his concerns about Bloods.

**\*10**  Nonetheless, because Plaintiff has not alleged facts in his Complaint showing that Battiste or Bezio had knowledge of, or personal involvement in, Adams being placed in a cell with him, or that they were aware of Adams' Bloods affiliation, he has failed to state an Eighth Amendment claim against the two supervisory officials for failure to protect him from the injuries he sustained in the fight with Adams. *See McKinnon,* 568 F.2d at 934 (personal involvement in constitutional deprivation is a prerequisite to an award of damages under § 1983); *Hayes,* 84 F.3d at 620 (defendant official must actually have known of and disregarded an excessive risk of harm to the plaintiff's safety to establish deliberate indifference).

Therefore, the Court recommends that Battiste and Bezio be granted summary judgment dismissing the Complaint as against them.

### C. Oropallo

Even assuming, *arguendo,* that the allegations in Plaintiff's Complaint are sufficient to satisfy, or at least raise a question of fact, on the issue of substantial risk of harm, the evidence in the summary judgment record establishes that Defendant Oropallo did not know of and disregard an excessive risk of harm to Plaintiff's safety in connection with Adams being placed in Plaintiff's cell. *See Hayes,* 84 F.3d at 620. The prison files on inmate Adams contained no notations indicating that he was gang related. (Dkt. No. 25–3 at ¶ 8.) The DOCCS "enemies" list did not identify Plaintiff and Adams as enemies. *Id.* at ¶ 6. Moreover, Plaintiff's security file contained no requirements for protective custody. *Id.* at ¶ 10.

According to Oropallo, prior to the altercation between Plaintiff and Adams, he had no personal knowledge or information that would have led him to believe that Adams was gang affiliated or would pose a threat to Plaintiff. (Dkt. No. 25–4 at ¶ 7.) Adams had not told Oropallo he was in a gang before being placed in Plaintiff's cell. *Id.* at ¶ 10. Moreover, the assignment of inmates in double cell housing was not within Oropallo's authority. *Id.* at ¶ 9.

Since Plaintiff has failed to submit opposition to Defendants' motion, the Court can look only to his verified Complaint for evidence demonstrating that a genuine issue of material

Case 9:22-cv-01178-DNH-MJK Document 140 Filed 02/17/26 Page 47 of 75
Price v. Oropallo, Not Reported in F.Supp.3d (2014)
2014 WL 4146276

fact exists as to whether Oropallo knew of and disregarded an excessive risk of harm to the plaintiff's safety. *Id.* Mere allegations in Plaintiff's Complaint, especially conclusory allegations or conjecture and speculation, are insufficient to create a genuine issue of fact. *See Matsushita,* 475 U.S. at 585–86; *Kerzer,* 156 F.3d at 400.

None of the allegations in Plaintiff's verified Complaint contradicts Defendants' evidence that prison records did not identify Adams as a member of the Bloods gang, that Oropallo had no knowledge that Adams was a member of the Bloods gang at the time he was placed in Plaintiff's cell, and that Oropallo had no authority with regard to the assignment of inmates in double cells. Therefore, Plaintiff has failed to raise a question of fact as to whether Oropallo was deliberately indifferent to his safety, a necessary element of proof on an Eighth Amendment claim for cruel and inhuman punishment based upon a failure to protect. *See Farmer,* 511 U.S. at 837. Therefore, the Court recommends that Oropallo's motion for summary judgment be granted.

**\*11 ACCORDINGLY,** it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 25) be **GRANTED;** and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892F.2d 15 (2d Cir.1989) (per curiam); 28 U.S.C. § 636(b) (1); Federal Rules of Civil Procedure 72, 6(a).

Filed June 18, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4146276

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:13cv00563**<br>PRICE v. OROPALLO ET AL | — | N.D.N.Y. | May 15, 2013 | Docket |

**History**

There are no History results for this citation.

WESTLAW　© 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Jenkins v. Cordero, Not Reported in Fed. Supp. (2019)

2019 WL 2121655

2019 WL 2121655
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Gerard JENKINS, Plaintiff,
v.
Correction Officer J. CORDERO, Correction
Officer Mayfield, Hearing Officer: Assistant Deputy
Superintendent of Programs J. Wood, Defendants.

17 Civ. 1592 (JCM)
|
Signed 05/15/2019

**Attorneys and Law Firms**

Gerard Jenkins, Otisville, NY, pro se.

Jeb Harben, Kacie Alina Lally, Office of the Attorney
General, New York, NY, for Defendants.

**OPINION AND ORDER**

JUDITH C. McCARTHY, United States Magistrate Judge

**\*1** Plaintiff Gerard Jenkins ("Plaintiff") proceeding *pro
se* commenced this action pursuant to 42 U.S.C. § 1983
alleging violations of his Eighth Amendment and Fourteenth
Amendment rights. [1] (Docket No. 2). The Court held an
evidentiary hearing on January 30, 2019 on the issue of
whether Plaintiff exhausted his administrative remedies under
the Prison Litigation Reform Act ("PLRA"). The parties
submitted post-hearing briefs. [2] For the reasons set forth
below, after hearing the testimony and considering the post-
hearing briefs, the Court finds that Plaintiff has satisfied the
exhaustion requirements of the PLRA.

[1]    This action is before this Court for all purposes on
       the consent of the parties, pursuant to 28 U.S.C. §
       636(c). (Docket No. 47).

[2]    The parties' briefs are hereinafter referred to as
       "Pl. Br." and "Defs. Br." respectively. (Docket Nos.
       68, 72). All page number citations refer to the one
       assigned upon electronic filing.

**I. BACKGROUND**

**A. Procedural Background**
On March 2, 2017, Plaintiff filed a complaint alleging (i)
correction officers Cordero and Mayfield used excessive
force against him while he was incarcerated at Sing Sing
Correctional Facility ("Sing Sing"); and (ii) defendant Deputy
Superintendent of Programs Wood violated his due process
rights by improperly disciplining him on allegedly false
charges. (Docket No. 2). Defendants moved to dismiss
the complaint against them claiming that Plaintiff failed
to exhaust his administrative remedies with respect to his
Eighth Amendment claim and did not plausibly allege
his Fourteenth Amendment claim. (Docket No. 14). The
Honorable Vincent L. Briccetti denied the motion to dismiss
as to the Eighth Amendment excessive force claim against
defendants Cordero and Mayfield, holding that dismissal for
failure to exhaust administrative remedies was unwarranted at
the pleading stage. *Jenkins v. Cordero*, No. 17 Civ. 1592 (VB),
2018 WL 456311, at \*3 (S.D.N.Y. Jan. 17, 2018). [3] Judge
Briccetti granted the motion to dismiss as to the Fourteenth
Amendment claim against defendant Wood, finding that
Plaintiff failed to plausibly allege this claim. *Id.* at \*3-4.

[3]    In accordance with *Lebron v. Sanders*, 557 F.3d
       76 (2d Cir. 2009) and Local Rule 7.2 of the Local
       Civil Rules of the United States District Courts for
       the Southern and Eastern Districts of New York,
       a copy of this case and other cases, *infra*, that
       are unpublished or only available by electronic
       database, accompany this opinion and shall be
       simultaneously delivered to *pro se* Plaintiff.

Following the close of discovery, Defendants requested an
evidentiary hearing to determine whether Plaintiff exhausted
his administrative remedies given the dispute over whether
Plaintiff ever attempted to file a grievance within the
timeframe required by the Department of Corrections and
Community Supervision ("DOCCS"). (Docket No. 36). Judge
Briccetti granted Defendants' request for an evidentiary
hearing, and the parties subsequently consented to proceed
before the undersigned for all purposes. (Docket No. 47). This
Court held an evidentiary hearing on January 30, 2019, and
the parties submitted post-hearing briefs.

**B. Factual Background**
**\*2** Plaintiff alleges that on August 31, 2015 he was assaulted
by CO Cordero and CO Mayfield while his wife was visiting
him at Sing Sing. (Compl.; Tr. 110:11-14). CO Cordero filed
a misbehavior report against Plaintiff, and after a disciplinary

hearing, Plaintiff was placed in the special housing unit ("SHU"). [4] (Compl. Ex. A; Tr. 110:15-21). Plaintiff testified that on September 2, 2015, while he was in the SHU, he submitted a grievance related to the alleged assault. (Tr. 103:20-104:4, 112:2-10; Defs. Ex. 1). Plaintiff claims that after he did not receive a response or a grievance number, he submitted a second grievance on October 5, 2015. (Tr. 112:5-7; Defs. Ex. 1). Plaintiff testified that in both instances, he submitted the grievances while in the SHU by handing his grievances to the correction officer who came around with the daily mailbox. (Tr. 111:7-112:18). At the evidentiary hearing, Plaintiff did not know the identity of the correction officer he gave his September 2, 2015 grievance to, but he described her as a tall female correction officer whose name began with the letter R. (*Id.* at 119:19-20; 115:24-116:8). Plaintiff could not recall if the same correction officer picked up the grievance on October 5, 2015, but he recalled giving his grievance to a female correction officer. (*Id.* at 122:2-124:4).

[4]   Plaintiff appealed the results of his disciplinary hearing, and the director of inmate disciplinary programs reversed the disciplinary determinations on February 13, 2017. (Compl. Ex. C).

Plaintiff was released from the SHU on November 10, 2015. (Tr. 112:13-15). Upon his release, he asked inmate Vincent Warren, the prison grievance representative, about the status of his grievances. (Defs. Ex. 1). Mr. Warren told Plaintiff that he remembered filing his grievance, but later informed him that the grievance had not been filed. (*Id.*). According to Plaintiff, on November 24, 2015, he spoke with the grievance supervisor, Quandera Quick, who informed Plaintiff that his grievances had not been received and the time to file them had passed. (*Id.*). That same day Plaintiff submitted another grievance concerning the procedures used for collecting grievances and indicated that his grievances were not being filed. (*Id.*).

At the evidentiary hearing, Ms. Quick explained that there are two ways an inmate housed in the SHU can file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). (Tr. 20:18-21). First, the inmate could "hand-deliver the grievance to the Grievance Sergeant while he or she makes rounds." (*Id.*). Second, the inmate could "place [the grievance] in the mailbox that's in the housing unit." (*Id.*). With respect to the second option, Ms. Quick explained that a correction officer will bring the mailbox around to the entire facility, including the SHU, and then bring the mailbox to the mailroom, who in turn sends any grievances to the grievance

office. (*Id.* at 21:2-18). In this case, Plaintiff testified that he used the second method of filing a grievance when he handed his grievance to the correction officer assigned to general mail collection in the SHU. (*Id.* at 111:7-112:18).

Ms. Quick explained that once the grievance office receives a grievance, she processes it in accordance with Directive 4040. (Tr. 15:6-9). Specifically, Ms. Quick reviews the grievance, codes it based on the nature of the allegations, and then gives it to the grievance clerk to assign a grievance number that is entered into a computer database. (*Id.* at 15:9-16:7). Once a grievance is given a number and entered into the database, it is considered filed. (*Id.* at 16:6-8).

Ms. Quick testified that she had no recollection of receiving or filing the subject grievances from Plaintiff. (Tr. 26:11-18). She also reviewed the grievance office's database and confirmed that Plaintiff's alleged grievances from September 2, 2015 and October 5, 2015 had not been filed. (Tr. 33:2-5; Defs. Ex. 3). Ms. Quick did, however, receive Plaintiff's November 24, 2015 grievance, in which he stated that his grievances were not being filed. (Tr. 26:22-25; Defs. Ex. 1). Upon receiving Plaintiff's November 24, 2015 grievance, Ms. Quick consulted with Mr. Warren about whether the grievance office had received Plaintiff's prior grievances. (Tr. 29:14-30:2). On December 1, 2015, Mr. Warren wrote a letter to Ms. Quick stating that he had never seen the grievances Plaintiff was asking about. (Defs. Ex. 2). However, Mr. Warren recanted the statement in his letter at the evidentiary hearing and testified that he wrote that he had never seen Plaintiff's grievance because he was afraid of being fired from his position at the grievance office if he admitted that he saw the grievance. (Tr. 67:18-68:3, 76:22-77:20).

**\*3** Inmate John Hale, who served as a grievance file clerk at the time, also testified that he remembered seeing a grievance concerning an assault that took place on the visit floor with CO Cordero, but he could not remember if the grievance was the November 24 grievance or the September 2 or October 5 grievances. (Tr. 100:7-102:8).

## II. LEGAL STANDARDS
The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," therefore "foreclosing judicial discretion."

2019 WL 2121655

*Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). "[P]roper exhaustion ... means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "The exhaustion inquiry thus requires that we look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009).

In New York State, a prisoner must comply with the rules of New York's Inmate Grievance Program ("IGP"). To exhaust a claim, a prisoner must complete the following three steps: (1) submit a complaint to the clerk of the facility's IGRC within twenty-one days of the alleged incident; (2) appeal an adverse decision to the superintendent of the facility within seven days of receipt of the IGRC's written response; and (3) appeal an unfavorable decision by the superintendent to the Central Office Review Committee within seven days of receipt of the superintendent's written response. 7 N.Y.C.R.R. § 701.5. A prisoner who has not received a response within the prescribed timeframe may appeal to the next level. *Id.* § 701.6(g)(2).

Because Plaintiff's failure to exhaust administrative remedies is an affirmative defense, Defendants bear the initial burden of establishing that a grievance process existed and applied to the alleged dispute. *See Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Defendants can meet their burden by "pointing to 'legally sufficient source[s]' such as statutes, regulations or grievance procedures." *Id.* (quoting *Mojias v. Johnson*, 351 F.3d 606, 610 (2d Cir. 2003)). If Defendants satisfy their initial burden, the burden shifts to Plaintiff to demonstrate "that other factors ... rendered a nominally available procedure unavailable as a matter of fact." *Id.*

In *Ross*, the United States Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

**\*4** Shortly after the Supreme Court's decision in *Ross*, the Second Circuit elaborated upon the "opaqueness" exception in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016). In *Williams*, an inmate housed in the SHU satisfied the PLRA's exhaustion requirement when he handed a grievance to a correction officer who then failed to file it. The Second Circuit explained that "[o]n their face, the regulations only contemplate appeals of grievances that were actually filed." *Id.* at 124. Because the plaintiff's grievance was not filed, it was "practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.* Therefore, the Second Circuit concluded that "the regulatory scheme ... [was] 'so opaque' and 'so confusing' that ... no reasonable prisoner can use [it].' " *Id.* (quoting *Ross*, 136 S. Ct. at 1859). Since *Williams*, numerous courts in this Circuit have followed its reasoning when assessing the "inescapable quandary that inmates find themselves in when their grievances are not filed." *McRae v. Cordero*, No. 15 Civ. 4334 (NSR)(PED), 2018 WL 3611964, at *6 (S.D.N.Y. July 26, 2018); *see also Ortiz v. Annucci*, No. 17 Civ. 3620 (RJS), 2019 WL 1438006, at *8 (S.D.N.Y. Mar. 29, 2019) ("If, in fact, Plaintiff timely attempted to file his grievance by handing it to an officer while in SHU and that officer failed to file the grievance, Plaintiff's avenues for pursuing the grievance would be unavailable under *Williams*, excusing him from any further exhaustion requirements."); *Terry v. Hulse*, No. 16 Civ. 252 (KMK), 2018 WL 4682784, at *9-10 (S.D.N.Y. Sept. 28, 2018); *Jackson v. Downstate Corr. Facility*, No. 16 Civ. 267 (NSR), 2018 WL 3650136, at *8 (S.D.N.Y. July 31, 2018).

## III. DISCUSSION

Defendants have met their initial burden of demonstrating that a grievance process existed and applied to the instant dispute. *See* 7 N.Y.C.R.R. § 701.5. The Court next addresses whether that grievance process was unavailable to Plaintiff within the meaning of the framework established by *Ross*.

Plaintiff argues that he has demonstrated the second *Ross* unavailability exception, the "opaqueness" exception. (Pl. Br. at 4). Plaintiff likens this case to *Williams*. He argues that he attempted to timely file his grievance regarding the August 31, 2015 incident while in the SHU by submitting his grievance through Sing Sing's mail system, which entails placing his grievance in the mailbox brought around by one of the correction officers on duty. (*Id.*). Plaintiff maintains that once he filed his grievance through Sing Sing's mailing

system it was "out of [his] hands" and the regulations do not describe a mechanism for appealing an unfiled grievance. (*Id.*).

The regulations analyzed by the Second Circuit in *Williams* are the same regulations as the ones here. 829 F.3d at 125-26 (citing 7 N.Y.C.R.R. §§ 701.5, 701.6, 701.8). Defendants do not contest the applicability of the *Williams* analysis to the instant case. Instead, they maintain that Plaintiff failed to complete any step of the grievance process and challenge his claim that he timely attempted to file a grievance while housed in the SHU. (Defs. Br. at 8-11). Defendants question Plaintiff's credibility, noting (1) Plaintiff had no issue filing other grievances while in the SHU; (2) Plaintiff did not explain why he inquired about the status of a separate grievance while failing to mention the September 2 and October 5 grievances; and (3) Plaintiff failed to adequately explain why he did not have copies of the grievances in question. (Defs. Br. at 10-11).

The pertinent factual issues that this Court must decide under *Williams* are whether Plaintiff attempted to file his grievance in the prescribed time and manner, and whether his grievances nonetheless remained unfiled.

### A. Plaintiff Attempted to File His Grievance Using the Proper Administrative Procedures

Plaintiff was initially required to submit a grievance to IGRC within twenty-one days of the August 31, 2015 incident. The Court credits Plaintiff's testimony that he attempted to file a grievance while in the SHU within the twenty-one-day period for several reasons. Plaintiff gave specific details about how on September 2, 2015, he handed the grievance to the correction officer who came around with the mailbox and did so again on October 5, 2015 when he did not receive a grievance number. Plaintiff's account was consistent with Ms. Quick's description of the procedure for filing a grievance from within the SHU. The Court bases its credibility determination in part on Plaintiff's demeanor, body language and tone of voice during his testimony. Other facts in the record further support a finding that Plaintiff attempted to file his grievance within the mandated timeframe. For example, once Plaintiff was released from the SHU, he immediately followed up with the inmate grievance representative about the status of his grievances, and he then raised his prior grievances with the civilian grievance supervisor to see if they were ever filed. Furthermore, Plaintiff's testimony that he handed his grievance to the correction officer on mail duty remained unrebutted. For example, CO Maribel Lopez, the correction officer Defendants called to testify that Plaintiff

did not attempt to mail a grievance while in the SHU, could not recall if she was the correction officer assigned to mail collection on the dates in question. (Tr. 57:1-11; 58:3-4).

**\*5** The evidence cited by Defendants that Plaintiff failed to exhaust his administrative remedies does not undermine Plaintiff's testimony. First, the evidence that Plaintiff filed other grievances while in the SHU shows that Plaintiff knew how to competently follow the correct grievance procedures available to him. *See Ortiz*, 2019 WL 1438006, at *9 ("If anything, Plaintiff's understanding of how the IGP process functions in the ordinary course bolsters the inference that the usual process did not unfold in this circumstance by suggesting that the filing failure did not result from Plaintiff's own ineptitude.").

Second, Defendants argue that Plaintiff's credibility is undermined by the fact that he filed a written complaint when he did not receive a grievance number in connection with a separate grievance regarding the Family Reunion Program ("FRP"), (Defs. Ex. 6), but he did not file a similar complaint with respect to the September 2 and October 5 grievances. (Defs. Br. at 10). The Court showed Plaintiff Defendants' Exhibit 6 and asked him why he requested a number for the FRP grievance but did not include the September 2 grievance in his request. (Tr. 108:9-109:17). Plaintiff testified that he specifically requested a number for the FRP grievance because he was preparing for a hearing regarding the FRP incident. (*Id.*). However, he did not think of requesting a number for the September 2 grievance at that time. (*Id.*). In any event, Plaintiff submitted written complaints regarding his September 2 grievance once he learned it had not been filed, and he promptly spoke with members of the grievance office in person once he was released from the SHU. (*See* Defs. Exs. 1, 4).

Third, Defendants maintain that Plaintiff does not offer a sufficient explanation for why he does not have copies of the September 2 and October 5 grievances. (Defs. Br. at 11). However, the Court credits Plaintiff's explanation that he typically keeps copies of his grievances, but his property bag was lost during transit and he no longer has any of his paperwork. (Tr. 10:4-7; 125:8-12).

Accordingly, based on Plaintiff's credible testimony, the Court finds that Plaintiff attempted to timely file his grievance relating to the August 31, 2015 incident in accordance with proper administrative procedures.

### B. Plaintiff's Grievance Was Never Filed

The evidence demonstrates that Plaintiff's grievances were not filed, even though he mailed his grievances in accordance with the IGP. Plaintiff did not know why his grievances were not filed, but once he mailed them, they were within DOCCS' possession and out of Plaintiff's control.[5] In such circumstances, the grievance process became unavailable to Plaintiff, thereby excusing him from pursuing further exhaustion requirements. *See* *Curtis v. Bola*, No. 15 Civ. 718 (GLS)(TWD), 2017 WL 6767392, at *13 (N.D.N.Y. Nov. 28, 2017), *report and recommendation adopted by*, No. 15 Civ. 718 (GLS)(TWD), 2018 WL 278673 (N.D.N.Y. Jan. 3, 2018) (the PLRA did not bar plaintiff's claims where he mailed his grievance in accordance with the IGP "and for reasons unknown to him and through no fault of his own, those [grievances] did not end up in the IGP files.").

[5] At the evidentiary hearing, Mr. Warren testified that Ms. Quick, the civilian grievance supervisor, tampered with grievances and prevented certain grievances from being filed. (Tr. 66:24-67:17). Such actions, if they took place, would certainly render the grievance process unavailable to Plaintiff under both the second and third unavailability exceptions. Defendants spend a significant portion of their post-trial brief challenging Mr. Warren's testimony. There is insufficient evidence for the Court to make a factual finding that Plaintiff's grievances were intentionally destroyed. However, intent is not a requirement under the "opaqueness" unavailability exception enunciated by *Williams*. Thus, the absence of evidence that Plaintiff's grievances were willfully destroyed by a prison administrator does not defeat Plaintiff's claim that the grievance process was unavailable to him.

### IV. CONCLUSION

**\*6** For the foregoing reasons, the Court finds that Plaintiff has met the PLRA's exhaustion requirement, and dismissal of his claim is not warranted. The Court schedules a Pre-Trial Conference for June 20, 2019 at 10:00 a.m. in Courtroom 421 in the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601. Due to *pro se* Plaintiff's incarceration, Defendants are directed to arrange Plaintiff's telephonic participation at the aforementioned time and date. The Clerk of Court is directed to mail a copy of this order to the *pro se* Plaintiff.

**SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2019 WL 2121655

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 7:17-CV-01592**<br>Jenkins v. Cordero et al | — | S.D.N.Y. | Mar. 02, 2017 | Docket |

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (1)**

1. Jenkins v. Cordero
2019 WL 2121655 , S.D.N.Y. , May 15, 2019

**Related References (1)**

2. Jenkins v. Cordero
2018 WL 456311 , S.D.N.Y. , Jan. 17, 2018

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7212156
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Ralph HALL, Plaintiff-Appellant,
v.
Anthony ANNUCCI, DOCCS Commissioner, in his official and personal capacity, Griffin, GHCF Superintendent, in his official and personal capacity, Dr. Bentivegna, GHCF Medical Supervisor, in his official and personal capacity, Dr. Kim, GHCF Medical Provider, in his official and personal capacity, Aileen McCarthy, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, Nicole Walsh, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, Donna Heitz, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, Deborah MacDonald, GHCF Hospital-Infirmary Nurse, in her official and personal capacity, Defendants-Appellees, GHCF Unknown Nursing Staff, in their official and personal capacities as Employees at Green Haven Correctional Facility between the September 26, 2017 date and October 30, 2017 and unnamed because of facility failure to disclose their identities, Defendant.

22-2031
|
November 2, 2023

Appeal from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Ralph Hall, pro se, Stormville, NY.

FOR DEFENDANTS-APPELLEES: Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy Solicitor General, Stephen J. Yanni, Assistant Solicitor General, for Letitia James, Attorney General of the State of New York, New York, NY.

PRESENT: ROBERT D. SACK, GERARD E. LYNCH, MICHAEL H. PARK, Circuit Judges.

<u>**SUMMARY ORDER**</u>

**\*1** Plaintiff-Appellant Ralph Hall, proceeding *pro se*, alleges that while incarcerated he developed a life-threatening bacterial infection known as Methicillin-resistant Staphylococcus aureus ("MRSA") due to Defendants' deliberate indifference. The district court granted summary judgment to Defendants due to Hall's failure to exhaust available administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The district court also declined to enter a default judgment against one of the individual Defendants and denied Hall's motion for reconsideration. On appeal, Hall challenges all three decisions. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

We review a grant of summary judgment *de novo. Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013). Summary judgment is appropriate only if, after resolving all ambiguities and drawing all inferences against the moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 126–27 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)). We also review *de novo* a district court's ruling on whether a plaintiff has exhausted administrative remedies under the PLRA. *See Romano v. Ulrich*, 49 F.4th 148, 152–53 (2d Cir. 2022).

Under the PLRA, a prisoner cannot sue over prison conditions until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This "exhaustion requirement applies to *all* inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (emphasis added), and it is mandatory, *see Ross v. Blake*, 578 U.S. 632, 638-39 (2016). Here, the relevant administrative process is the three-step Inmate Grievance Program ("IGP"). *See* 7 N.Y.C.R.R. § 701.1 *et seq.*; *Garcia v. Heath*, 74 F.4th 44, 46 (2d Cir. 2023).

The district court correctly concluded that the IGP was available to Hall and that his arguments to the contrary are unavailing. The PLRA's exhaustion requirement applies to complaints about medical treatment. *See Macias v. Zenk*, 495 F.3d 37, 43–45 (2d Cir. 2007); *see also Napier v. Laurel Cnty.*,

Hall v. Annucci, Not Reported in Fed. Rptr. (2023)

2023 WL 7212156

*Ky.*, 636 F.3d 218, 221 (6th Cir. 2011) (applying the PLRA's exhaustion requirement in the specific context of a MRSA infection). It is undisputed that Hall never filed a grievance regarding the allegedly inadequate medical care that led to his infection. Thus, the only question remaining for us is whether the IGP was unavailable to Hall. *See* Appellant's Br. at 5–6.

Prisoners are excused from the exhaustion requirement when administrative remedies are "unavailable." *Ross*, 578 U.S. at 642. An administrative procedure is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

**\*2** The district court correctly determined that there is no genuine issue of fact as to whether any exception applies to Hall's failure to file a grievance related to his medical treatment. The IGP was not a dead end nor too opaque for an ordinary prisoner to navigate. In fact, Hall had previously used the IGP to file several grievances, including for medical- and health-related issues, that resulted in relief. Hall alleges that a correctional officer's comment about his likelihood of dying in prison "thwarted" his attempt to file a grievance about his medical treatment. But this argument is meritless because Hall in fact filed a grievance about that very comment.

Accordingly, the district court correctly granted summary judgment to Defendants on the issue of exhaustion. Because that issue is dispositive, we need not separately address whether the court abused its discretion by denying reconsideration of its previous denial of Hall's request for a default judgment. *See RSM Prod. Corp. v. Fridman*, 387 F. App'x 72, 75 (2d Cir. 2010) ("Because the action was properly dismissed as to the appearing defendants, we cannot conclude that the district court abused its discretion in declining to enter default judgments against the non-appearing defendants."). We note, however, that Hall failed in any event to obtain an entry of default against the relevant Defendant under Federal Rule of Civil Procedure 55(a). *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (explaining that Rule 55 "provides a two-step process for obtaining a default judgment," the first of which is "to obtain an entry of default"). Nor does it appear that the relevant Defendant was served at the time Hall requested default judgment. *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (describing that before a court grants a motion for default judgment, it "may first assure itself that it has personal jurisdiction over the defendant").

We have considered Hall's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 7212156

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (3)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 23-6655**<br>RALPH HALL v. ANTHONY J. ANNUCCI, ET AL. | — | U.S. | Feb. 05, 2024 | Docket |
| **2. Docket 22-2031**<br>Hall v. Annucci | — | C.A.2 | Sep. 16, 2022 | Docket |
| **3. Docket 7:19-CV-05521**<br>Hall v. Annucci et al | — | S.D.N.Y. | June 12, 2019 | Docket |

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (8)**

**Direct History (6)**

1. Hall v. Annucci
2022 WL 3903255 , S.D.N.Y. , Aug. 30, 2022

*Affirmed by*

> 2. Hall v. Annucci
> 2023 WL 7212156 , 2nd Cir.(N.Y.) , Nov. 02, 2023

*Certiorari Denied by*

3. Hall v. Annucci
144 S.Ct. 1107 , U.S. , Mar. 25, 2024

4. Hall v. Annucci
2022 WL 3903255 , S.D.N.Y. , Aug. 30, 2022

*Reconsideration Denied by*

5. Hall v. Annucci
2024 WL 4556610 , S.D.N.Y. , Oct. 22, 2024

*Appeal Dismissed by*

6. Hall v. Bentivegna
2025 WL 3439771 , 2nd Cir.(N.Y.) , Sep. 04, 2025

**Related References (2)**

7. Hall v. Annucci
2021 WL 4392526 , S.D.N.Y. , Sep. 24, 2021

8. Hall v. Annucci
2024 WL 4380313 , 2nd Cir.(N.Y.) , Oct. 03, 2024

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1499208
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

XL SPECIALTY INSURANCE COMPANY, Plaintiff,

v.

OTTO NAUMANN, LTD.,
Defendant and Third–Party Plaintiff,

v.

Julius Lowy Frame & Restoring
Co. Inc., Third–Party Defendant.

No. 12–CV–8224 (DAB).
|
Signed March 31, 2015.

*MEMORANDUM AND ORDER*

DEBORAH A. BATTS, District Judge.

**\*1** Plaintiff XL Specialty Insurance Company ("XL") brings this suit against Defendant Otto Naumann, Ltd. ("Naumann") for rescission of an insurance payment made for a missing painting. The painting was later found in the possession of Julius Lowy Frame & Restoring Co. Inc. ("Lowy"). Naumann in turn brings a third-party complaint against Lowy alleging negligent handling of the painting. XL moved for judgment on the pleadings against Naumann. That Motion is DENIED. Lowy moved to dismiss the third-party complaint by Naumann. That Motion is GRANTED.

I. *BACKGROUND*
The following facts are based on the respective pleadings. [1]

[1] Naumann attaches affidavits to its brief, which the Court will ignore in deciding the Rule 12(c) and 12(b)(6) motions. *See* Fed.R.Civ.P. 12(d).

A. *Allegations of XL's Complaint*
Naumann, a fine art dealer in New York, purchased an insurance policy from XL, a Connecticut insurance company. (Compl.¶¶ 1–2, Ex. C.) In July 2007, Naumann submitted a claim to XL for a stolen painting worth $450,000. (*Id.* Ex. B.) After investigation, XL paid Naumann $357,500 on the claim. (*Id.* ¶¶ 14–15, 23.)

In April 2012, Naumann's insurance broker informed XL that the painting was found at Lowy, a framing company located on the same street as Naumann. (*Id.* ¶¶ 8, 24–25.) According to XL, back in May 2007, Naumann had delivered the painting to Lowy for reframing and then lost track of it. (*Id.* ¶¶ 9–10.) XL attached to its complaint what appears to be a receipt from Lowy for Naumann's work order on the painting. (*Id.* Ex. A.)

Naumann refused to return the $357,500 to XL. (*Id.* ¶ 27.)

B. *Allegations of Naumann's Third–Party Complaint*
Naumann's answer to XL's complaint denied that Naumann gave the painting to Lowy. (First Amended Answer and Third Party Complaint ("Answer") ¶¶ 9–10, Dkt. 16.) In the same document, however, Naumann asserted a negligence claim against Third–Party Defendant Lowy that included allegations that Lowy picked up the painting from Naumann for reframing. (*Id.* ¶¶ 42–43.)

According to Naumann, it never received any documentation from Lowy regarding the restoration. (*Id.* ¶¶ 49–50.) The painting "was not in the same condition as when it was last in Naumann's possession," and it "no longer has the value it had when [Lowy] took possession." (*Id.* ¶¶ 64–65.)

II. *DISCUSSION*

A. *Standard of Review*
"Judgment on the pleadings" under Rule 12(c) is "appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). Accordingly, a 12(c) movant must establish "that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland,* 901 F.2d 266, 269 (2d Cir.1990) (internal quotation marks omitted).

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). The complaint need only include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B. *Naumann's Inconsistent Pleadings*

**\*2** Naumann has made conflicting assertions of fact with respect to how Lowy came to possess the painting. In its answer, Naumann denies that it gave Lowy the painting for restoration. Yet, in its third-party complaint against Lowy (part of the same document as the answer), Naumann states —presumably in order to create a duty in Lowy—that it hired Lowy to fix the painting. Naumann then clarifies in its brief that Lowy's obtainment of the painting is disputed and that Naumann is merely making a conditional allegation: "if in fact Lowy took possession from Naumann," then Lowy failed to handle the painting with care. (Naumann Br. at 6, Dkt. 24.)

Naumann cannot, as the saying goes, have its cake and eat it too. Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit "inconsistent *assertions of facts* within the allegations." *In re Livent, Inc. Noteholders Secs. Litig.,* 151 F.Supp.2d 371, 407 (S.D.N.Y.2001); *see also United States v. Gotti,* 771 F.Supp. 535, 540 (E.D.N.Y.1991) ("There is a significant difference between pleading alternative theories of law based upon given facts and pleading alternative statements of fact to support a given principle of law.").

Naumann has made clear that it disputes XL's account of Lowy's attainment of the painting. The Motions before the Court will be evaluated in light of that contention.

### C. *XL's Rule 12(c) Motion for Judgment on the Pleadings*
XL argues that it is entitled to rescission of the insurance money paid to Naumann because the payout was based on a mutually mistaken understanding that the painting was stolen. This argument is premised on Naumann admitting to giving the painting to Lowy, which Naumann does not. Nor does XL suggest that the purported receipt attached to the complaint by itself establishes how the painting arrived at Lowy. That dispute creates a question of fact, and the rescission claim will continue.

XL next asserts a claim for negligent misrepresentation, which requires that Naumann made a false statement. *See, e.g., Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir.2000). XL submits that Naumann falsely told XL that the painting was stolen. Again, there is a question of fact as to the falsity of that statement.

Finally, XL asks for a finding that Naumann was unjustly enriched, which requires a showing that equity militates against the defendant retaining the property in question. *See, e.g., Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir.2004). Given the dispute over Lowy's attainment of the painting, the Court cannot conclude, based on the pleadings alone, that it would be inequitable for Naumann to keep the insurance money.

### D. *Lowy's 12(b)(6) Motion To Dismiss The Third–Party Complaint*
Naumann seeks to hold Lowy liable for negligent handling of the painting. To bring a negligence claim, Naumann must establish that Lowy owed a "duty" to Naumann. *Alfaro v. Wal–Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir.2000). As the Court previously stated in dismissing Naumann's initial third-party complaint against Lowy, "[i]t is plausible that a duty would arise when the owner of a painting takes it to a shop to be restored." Opinion, Mar. 28, 2014, Dkt. 15 at 6. Naumann's initial third-party complaint against Lowy did not, however, allege that Naumann hired Lowy to restore the painting. *Id.* Accordingly, no duty arose in Lowy based on that pleading. *Id.* [2]

[2]    Nor had Naumann alleged any injury to the painting. Rather, Naumann indicated only that the painting was "not in the same condition as when it was last in Naumann's possession." Dkt. 15 at 7.

**\*3** Similarly, Naumann has not properly made any such allegation in its amended third-party complaint. Naumann's decision to dispute how Lowy obtained the painting means Naumann has not alleged a duty in Lowy. The negligence claim against Third–Party Defendant Lowy once again fails.

### III. *CONCLUSION*
There is a disputed issue of fact as to how Lowy came to possess the painting in question. Given that circumstance, XL's Motion for Judgment on the Pleadings is DENIED.

In the absence of allegations that create a duty in Lowy to Naumann, Lowy's Motion to Dismiss the Third–Party Complaint is GRANTED. On the facts claimed by Third–Party Plaintiff Naumann, leave to replead would be futile, so the dismissal is WITH PREJUDICE.

2015 WL 1499208

The remaining Parties are to appear for a Rule 16 Conference on April 16, 2015 at 10:30 AM.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1499208

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (7)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment**<br>XL SPECIALTY INSURANCE COMPANY, Plaintiff, v. OTTO NAUMANN, LTD., Defendant.<br>2017 WL 4100459 | — | S.D.N.Y. | Mar. 01, 2017 | Motion |
| **2. Reply Memorandum of Law in Further Support of Plaintiff XL Specialty Insurance Company's Motion for Judgment on the Pleadings and Third-Party Defendant Julius Lowy Frame & Restoring Co. Inc.'s Motion to Dismiss the Third-Party Complaint with Prejudice**<br>XL SPECIALTY INSURANCE COMPANY, Plaintiff, v. OTTO NAUMANN, LTD., Defendant and Third-Party Plaintiff, v. Julius Lowy Frame & Restoring Co. Inc., Third-Party Defendant.<br>2014 WL 10296168 | — | S.D.N.Y. | Aug. 22, 2014 | Motion |
| **3. Memorandum of Law in Opposition to Plaintiff XL Specialty Insurance Company's Motion for Summary Judgment on the Pleadings and Third-Party Defendant Julius Lowy Frame & Restoring Co. Inc.'s Motion to Dismiss the Third-Party Complaint with Prejudice**<br>XL SPECIALTY INSURANCE COMPANY, Plaintiff, v. OTTO NAUMANN, LTD., Defendant and Third-Party Plaintiff, v. Julius Lowy Frame & Restoring Co. Inc., Third-Party Defendant.<br>2014 WL 10296150 | — | S.D.N.Y. | July 21, 2014 | Motion |
| **4. Third-Party Defendant Julius Lowy Frame & Restoring Co. Inc.'s Reply Memorandum of Law in Further Support of Its Motion to Dismiss the Third-Party Complaint**<br>XL SPECIALTY INSURANCE COMPANY, Plaintiff, v. OTTO NAUMANN, LTD., Defendant and Third-Party Plaintiff, v. Julius Lowy Frame & Restoring Co. Inc., Third-Party Defendant.<br>2013 WL 6417742 | PDF | S.D.N.Y. | June 21, 2013 | Motion |
| **5. Third-Party Defendant Julius Lowy Frame & Restoring Co. Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Third-Party Complaint**<br>XL SPECIALTY INSURANCE COMPANY, Plaintiff, v. OTTO NAUMANN, LTD., Defendant and Third-Party Plaintiff, v. Julius Lowy Frame & Resotring Co. Inc., Third-Party Defendant.<br>2013 WL 6417935 | PDF | S.D.N.Y. | May 01, 2013 | Motion |
| **6. Joint Stipulation of Dismissal with Prejudice under FRCP 41**<br>XL SPECIALTY INSURANCE CO., Plaintiff, v. OTTO NAUMANN, LTD., Defendant.<br>2019 WL 6001245 | — | S.D.N.Y. | June 03, 2019 | Jury Verdict |
| **7. Docket 1:12-CV-08224**<br>XL Specialty Insurance Company v. Otto Naumann, LTD. | — | S.D.N.Y. | Nov. 13, 2012 | Docket |

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History (3)**

**Direct History (1)**

1. XL Specialty Ins. Co. v. Otto Naumann, Ltd. 👓
2015 WL 1499208 , S.D.N.Y. , Mar. 31, 2015

**Related References (2)**

2. XL Specialty Insurance Co. v. Otto Naumann, Ltd.
2014 WL 13111414 , S.D.N.Y. , Mar. 28, 2014

3. XL Specialty Insurance Company v. Otto Naumann, Ltd.
2019 WL 13506175 , S.D.N.Y. , Apr. 18, 2019

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag
Distinguished by Galberth v. Washington, S.D.N.Y., March 29, 2016

2014 WL 2800753
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Glenn JOHNSON, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
CORRECTION, Deputy Warden Lewis, Captain Levy,
Co. Simpson, and Intake Officer Pepe, Defendants.

No. 13 Civ. 6799(CM).
|
Signed June 16, 2014.

### MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

**\*1** *Pro se* plaintiff Glenn Johnson ("Plaintiff") initiated this action on September 24, 2013, by filing a complaint against the New York City Department of Corrections ("DOC"), Deputy Warden Lewis, Captain Levy, Corrections Officer Simpson, and Corrections Officer Pepe (collectively, "Defendants")[1] pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was subject to unconstitutional conditions of confinement while he was detained at the Anna M. Kross Center ("AMKC") at Rikers Island.

[1]    Some of these defendants were initially listed as "John Does." Plaintiff added their names in his Amended Complaint filed on January 21, 2014.

Defendants now move to dismiss Plaintiff's Amended Complaint ("Complaint"), on the grounds that Plaintiff (1) fails to assert a constitutional violation; (2) fails to allege the existence of any unconstitutional municipal policy or custom; and (3) failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a) ( "PLRA"). For the reasons set forth herein, Defendants' motion is GRANTED.

### BACKGROUND

In the Complaint, Plaintiff alleges that he was brought to AMKC (a DOC facility) as a new admission "on or about" July 25, 2013 at 11:00 pm and was placed in the intake area. Compl. § II.C. Plaintiff alleges that he was then held in the intake area for five days, during which time he slept on the floor or on a bench. *See id.* §§ II.C, V. As a result, Plaintiff alleges that he suffers from back and neck pain for which he takes medication. *See id.* §§ II.C, III. Plaintiff also alleges that he did not have access to a shower while he was being held at intake. *See id.* § II.C.

Due to these events, Plaintiff asserts a cause of action under § 1983 for "cruel and unusual punishment" in violation of the Eighth Amendment. *Id.* § V.

With respect to exhausting his administrative remedies, Plaintiff alleges that he placed a grievance "in the drop box for the grievance committee in the Anna M. Kross Center (C–95) sometime in July of 2013." Docket No. 26 ("Pl.Opp.") at 1. He asserts that he "did not get an answer from them for the [whole] month" that he was held at AMKC. Compl. at § IV.F.1. Plaintiff admits that he did not make any attempts to appeal his grievance. *See id.* § IV.E.3.

Plaintiff alleges that he was transferred to the Eric M. Taylor Center ("EMTC") at Rikers Island a month after he filed his grievance in July 2013. He asserts that he was released from EMTC in September 2013. *See* Pl. Opp. at 1.

The documentary evidence submitted by Plaintiff contradicts his assertion that he filed a grievance in July 2013. The grievance form attached to the Complaint is dated September 14, 2013, and it states that Plaintiff was housed at EMTC at the time of filing. Plaintiff does not offer any explanation for this discrepancy. The grievance form includes an explanation of the five steps of the Inmate Grievance and Request Program ("IGRP"), the administrative process by which inmates can submit complaints relating to prison conditions.

**\*2** Defendants filed a motion to dismiss the Complaint on March 31, 2014. Thereafter, Plaintiff did not file any timely opposition to the motion. On May 30, 2014, the Court held a telephone conference with the parties. During that conference, the Court directed Plaintiff to respond to the Defendants' motion to dismiss and to explain why he was unable to exhaust his administrative remedies. *See* ECF Entry dated

Johnson v. New York City Dept. of Correction, Not Reported in F.Supp.3d (2014)
2014 WL 2800753

May 30, 2014. Plaintiff thereafter submitted a letter to the Court dated June 1, 2014, opposing the Defendants' motion to dismiss ("Opposition").

In the Opposition, Plaintiff explained his failure to exhaust his administrative remedies as follows: "Once I was released, I did not know that I could follow-up a grievance request in the City of New York or refile the request when moved to another facility on Riker's Island." PL Opp. at 1.

**DISCUSSION**

**I. Standard of Review**
In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *see also Roth v. Jennings,* 489 F.3d 499, 510 (2d Cir.2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible," the plaintiff's complaint must be dismissed. *See id.* at 570; *Iqbal,* 129 S.Ct. at 1950–51.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A court must interpret *pro se* filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d. Cir.2006). However, dismissal of a *pro se* complaint is appropriate where the plaintiff has "clearly failed to meet minimum pleading requirements. *Brown v. City of New York,* 2010 U.S. Dist. LEXIS 94947, at *7, 2010 WL 3565171 (S.D.N.Y. Mar. 2, 2010).

**II. Plaintiff Failed to Exhaust His Administrative Remedies.**
 **\*3** The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The purpose of the PLRA is to "reduce the quantity and improve the quality" of prisoner suits, and to afford corrections officials the opportunity to address problems internally before resorting to the federal judicial process. *Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004).

The exhaustion requirement applies to "all prisoners seeking redress for any prison circumstances or occurrences," whether it was a particular episode or an ongoing circumstance. *Porter v. Nussle,* 534 U.S. 516, 519, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Under § 1997e(a), all available remedies must be exhausted. The remedies do not need to meet any federal standards nor must they be "plain, speedy, and effective." *Id.* at 524. A prisoner cannot satisfy the PLRA's exhaustion requirement by filing an untimely or administratively defective grievance or appeal. *See Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The Second Circuit "does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not appeal to the highest available level of administrative review and provides no justifiable explanation for his failure to do so." *George v. Morrison,* No. 06 Civ. 3188(SAS), 2007 WL 1686321, at *4 (S.D.N.Y. June 11, 2007) (citing *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004)).

A plaintiff is not required to plead exhaustion; rather, it is an affirmative defense for which the defendant bears the burden of proof. *See Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). However, if it is clear from the face of the complaint that the plaintiff failed to exhaust his administrative remedies, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted. *See Stevens v. City of New York,* 2012 U.S. Dist. LEXIS 150227, at *6, 2012 WL 4948051 (S.D.N.Y. Oct. 11,2012).

2014 WL 2800753

Because it is apparent from the Complaint that Plaintiff failed to exhaust his administrative remedies by following the steps of the Inmate Grievance and Request Program ("IGRP"), [2] his Complaint must be dismissed.

[2]    New York City Department of Corrections, Directive 3376, effective September 10, 2012. *See* Docket No. 22, Ex. A ("IGRP Directive 3376"). The Court takes judicial notice of the IGRP, as courts in this circuit routinely do. *See, e.g., Myers v. City of New York,* 11 Civ. 8525(PAE), 2012 WL 3776707, at *4 n. 6 (S.D.N.Y. Aug. 29, 2012).

Pursuant to the IGRP, an aggrieved inmate must follow a five-step review process for all complaints: (1) filing a grievance with the IGRP staff within ten days of the date of the alleged incident; (2) informal resolution of the complaint by IGRP staff; (3) if an informal resolution is not reached within five days, requesting a formal hearing before the Inmate Grievance Resolution Committee ("IGRC"); (4) appealing the IGRC's decision to the Commanding Officer; (4) appealing the Commanding Officer's decision to the Central Office Review Committee ("CORC"); and (5) appealing the CORC's decision to the New York City Board of Correction ("BOC"). *See* IGRP Directive 3376 at § II; *White v. Dep't of Corrs.,* No. 11 Civ. 9254(TPG), 2013 WL 1209567, at *2 (S.D.N.Y. Mar.21, 2013).

**\*4** The IGRP provides specific time frames for each step in the grievance process. If an inmate does not receive a response within these specified time frames, he must appeal to the next level of the process in order to properly exhaust his administrative remedies. *See Gantt v. Horn,* No. 09 Civ. 7310(PAE), 2013 WL 865844, at *6 (S.D.N.Y. Mar.8, 2013). It is well settled that an inmate must complete all requisite steps of the IGRP in order to fully exhaust his administrative remedies; even if he does not receive a response at a particular step in the proceedings, he must proceed in timely fashion to the next step. *See, e.g., Salvatierra v. Connolly,* No. 09 Civ. 3722(SHS) (DF), 2010 WL 5480756, at *17 (S.D.N.Y. Sept. 1, 2010) (collecting cases), *report and recommendation adopted,* No. 09 Civ. 3722(SHS), 2011 WL 9398 (S.D.N.Y. Jan.3, 2011).

### A. Plaintiff Did Not Follow All Five Steps of the IGRP Process .

Plaintiff concedes that he did not follow the five steps of the IGRP process prior to filing his Complaint with this Court. He alleges that he filed an initial grievance about the circumstances of his admission to AMKC in either July or September 2013, and that he received "no response" for an entire month. Pl. Opp. at 1. Plaintiff admits that he did not request a formal hearing before the IGRC or appeal to the Commanding Officer, the CORC, or the BOC. *See* Compl. § IV.E.3.

It appears that Plaintiff may have failed to properly perform the first step of the IGRP process-filing a grievance within ten days of the incident in question. Plaintiff alleges that he was admitted to AMKC "on or about" July 25, 2013 and held at intake for five days without a bed or shower. Compl. § II.C. In his Opposition, Plaintiff alleges that he filed a grievance sometime in July 2013, which would have been within ten days of the incident.

However, the copy of the grievance that Plaintiff claims to have filed-which he provided to the Court-suggests otherwise. A court "is not required to accept as true allegations that are contradicted by documentary evidence that may be considered on a motion to dismiss." *Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP,* 348 F.Supp.2d 255, 263 (S.D.N.Y.2004). The grievance form attached to the Complaint is dated September 14, 2013, well over ten days after the July 2013 incident. Accordingly, the documentary evidence submitted by the Plaintiff himself suggests that he failed to file his grievance within ten days of the incident.

Even accepting Plaintiff's alternative allegation that he submitted a timely initial grievance in July 2013, the Plaintiff failed to exhaust his administrative remedies. The IGRP is a five-step process. After the first step of submitting a grievance, the IGRP states that an aggrieved inmate must request a formal hearing and then pursue three levels of appeals. Plaintiff concedes that he did not fulfill these four steps of the IGRP at all, let alone in a timely fashion. Thus, Plaintiff failed to exhaust his administrative remedies.

### B. Plaintiff is Not Excused from Exhaustion.

**\*5** In certain situations, an inmate may be excused from the PLRA's exhaustion requirement. In determining whether a plaintiff is excused from exhaustion, the court must undertake a three-part inquiry. *See Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004). An inmate may be excused from the exhaustion requirement if: (1) the administrative remedies were not in fact available; (2) the defendants' actions inhibited exhaustion and they are therefore estopped from arguing non-exhaustion; or (3) "special circumstances" exist

2014 WL 2800753

(*e.g.,* an inmate reasonably misunderstood the requirements of the grievance procedures). *Id.*

Plaintiff does not explicitly argue that he should be excused from exhausting his administrative remedies. However, he states in his Opposition letter: "Once I was released, I did not know that I could follow-up a grievance request in the City of New York or refile the request when moved to another facility on Riker's Island." Pl. Opp. at 1. Construing Plaintiff's Opposition liberally, he raises two possible grounds for excuse: (1) Plaintiff was transferred to a different facility, or (2) Plaintiff was released from DOC custody. These arguments fail.

First, courts have in some cases found that an administrative remedy may properly be considered "unavailable" where an inmate is transferred shortly after the incident at issue and cannot pursue his complaint thereafter due to different grievance procedures. *See Hartry v. Cnty. of Suffolk,* 755 F.Supp.2d 422, 433 (E.D.N.Y.2010) (collecting cases). Plaintiff alleges that he was transferred from AMKC to EMTC, another DOC facility on Rikers Island. His documentary evidence supports his claim; the untimely grievance that he claims to have filed (which is dated September 14, 2013) indicates that he was housed at EMTC at that time.

However, "a transfer between New York City-run facilities does not excuse the requirement to exhaust, because the grievance procedures are the same throughout all facilities." *Smith v. City of New York,* No. 12 Civ. 3303, 2013 WL 5434144, at *17 (S.D.N .Y. Sept. 26, 2013). Both the AMKC and EMTC facilities are located on Rikers Island, and both utilize the same grievance process-the IGRP. Accordingly, Plaintiff is not excused from exhaustion on the basis of his transfer to EMTC; he could have easily pursued his administrative remedies while housed at any Rikers facility.

Second, Plaintiff alleges that he did not know that he could "follow-up a grievance request" after he was released from DOC custody in September 2013. Pl. Opp. at 1. However, a prisoner is not excused from the PLRA's exhaustion requirement where he files a grievance while in custody and has the opportunity to exhaust his administrative remedies prior to his release or during subsequent periods of confinement. *See Berry,* 366 F.3d at 88.

IGRP Directive 3376 states that an inmate has up to ten business days after an incident to file a grievance. IGRP

staff members then have five business days to respond to the initial grievance. Thereafter, the inmate has five business days to proceed to the next step of the IGRP-requesting a formal hearing before the IGRC. Accordingly, within ten business days of filing the grievance form, Plaintiff should have requested a formal hearing.

**\*6** Plaintiff alleges that the incident took place from July 25 to July 30, 2013. Assuming that Plaintiff filed a timely grievance (which he could have filed at any time up to August 13, 2013) and received no response within five business days (August 20, 2013), Plaintiff, who was still housed at Rikers Island, could have taken the next step and requested a hearing. He had five business days to do so-or until August 27, 2013. He concedes that he made no effort to seek a formal hearing; he was not released until after September 14, 2013. Thus, Plaintiff's release from custody did not render the grievance process "unavailable" to him; he simply failed to exhaust this administrative remedy.[3]

3    Plaintiff seems to have spent much of 2013 and 2014 on Rikers Island. Plaintiff's grievance form indicates that he was still held at EMTC on September 14, 2013. Plaintiff may have been released briefly, but his original complaint in this action-which was filed on September 24, 2013–indicates that he was located at AMKC at that time. The Amended Complaint-which is dated January 21, 2014–likewise notes that Plaintiff was housed at AMKC. Indeed, Plaintiff is in DOC custody today. He filed a change of address form with this Court on March 25, 2014 stating that he had moved from the Bronx to the George Motchan Detention Center at Rikers; his letter dated June 1, 2014 stated that he was still there. Plaintiff's apparently brief period of freedom in mid-September 2013 did not end his relationship with the jail or his access to the 1GRP process. In any case, it does not matter that Plaintiff had access to the grievance process during his subsequent periods of confinement, since he had plenty of time to pursue his grievance prior to his release in mid-September 2013.

The Court also notes that Plaintiff submitted medical records indicating that he suffers from schizophrenia. *See* Compl. at 9. This might raise the question of whether there were "special circumstances" excusing Plaintiff's failure to exhaust his administrative remedies. *Hemphill,* 380 F.3d at 686. However, in the absence of factual allegations showing that a

2014 WL 2800753

plaintiff was "physically or mentally unable to comply with the grievance process," a health problem does not excuse a plaintiff from exhaustion. *Bennett v. James,* 737 F.Supp.2d 219, 227–28 (S.D.N.Y.2010), *aff'd,* 441 Fed. App'x 816 (2d Cir.2011).

Other courts facing complaints brought by schizophrenic inmates have declined to excuse the PLRA's exhaustion requirement, although aware of the plaintiff's diagnosis. *See Taylor v. Hen derson,* No. 11 Civ. 351 (RGK/DTB), 2012 WL 6838947, at *5–6 (C.D.Cal. Aug.28, 2012), *report and recommendation adopted,* No. 11 Civ. 351 (RGK/DTB), 2013 WL 139203 (C.D.Cal. Jan.9, 2013); *Helmer v. Herkimer Cnty. Jail Adm'r,* No. 09 Civ. 542 (LEK/DRH), 2011 WL 978939, at *6 (N.D.N.Y. Feb.25, 2011), *report and recommendation adopted,* No. 09 Civ. 542 (LEK/DRH), 2011 WL 971471 (N.D.N.Y. Mar.17, 2011); *Braswell v. Corrs. Corp. of America,* No. 08 Civ. 691, 2009 WL 2447614, *11 (M.D.Tenn. Aug. 10, 2009).

Here, Plaintiff has not alleged that his schizophrenia interfered with his ability to utilize the IGRP grievance process, and no facts in the record indicate that in July and August 2013—when Plaintiff should have been pursuing the various steps in the IGRP–Plaintiff's schizophrenia rendered him unable to file an initial grievance, to request a formal hearing, or to submit an appeal. Indeed, Plaintiff's correspondence with this Court throughout the last year has demonstrated that he is perfectly capable of filing simple forms like those involved in the IGRP process.

As Plaintiff has offered no basis upon which this Court may excuse his failure to exhaust his administrative remedies, I grant the Defendants' motion to dismiss.

Because Plaintiff failed to exhaust his administrative remedies, this Court need not address the Defendants' other arguments in support of their motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed close out the motion at Docket No. 20, to remove same from the Court's list of pending motions, and to close the file.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2800753

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:13cv06799**<br>JOHNSON ET AL v. DOE ET AL | — | S.D.N.Y. | Sep. 25, 2013 | Docket |

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**History**

There are no History results for this citation.

**WESTLAW** © 2026 Thomson Reuters. No claim to original U.S. Government Works.